James A. KAPLY, Appellant (Petitioner Below),

v.

Sally KAPLY, Appellee (Respondent Below).

No. 2–881A262.

Court of Appeals of Indiana, Second District.

Sept. 7, 1983.

Ted Lewis, Indianapolis, John R. Hillis, Logansport, for appellant.

Daniel S. Tankersley, Winamac, for appellee.

SULLIVAN, Judge.

James A. Kaply (husband) appeals from a decree dissolving his marriage of forty-one years to Sally Kaply (wife). The issue is whether the trial court's disposition of marital property was just and reasonable. Husband alleges that the trial court abused its discretion in awarding him what he claims to be about 16–19%, and his wife, about 80% of the total marital assets.

We affirm.

The dissolution statute provides:

"Disposition of Property. (a) In an action pursuant to section 3(a) of this chapter, the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one (1) of the spouses and requiring either to pay such sum, either in gross or in installments, as may be just and proper, or by ordering the sale of the same under such conditions as the court

may prescribe and dividing the proceeds of such sale.

In determining what is just and reasonable the court shall consider the following factors:

(1) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

(2) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(3) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(4) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(5) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties." I.C. 31–1–11.5–11 (West Ann.Code 1979).

 The trial court has broad discretionary power in the disposition of marital property. *Henderson v. Henderson* (1st Dist.1980) Ind.App., 401 N.E.2d 73, 74. As a reviewing tribunal, we are not at liberty to reweigh the evidence; instead, we must consider the evidence most favorable to the trial court's decision. *In Re Marriage of Church* (2d Dist.1981) Ind.App., 424 N.E.2d 1078 at 1080. Only where it is clearly shown that there is no rational basis for its action will we set aside the court's disposition of property as being unjust or unreasonable. *Cunningham v. Cunningham* (1st Dist.1982) Ind.App., 430 N.E.2d 809, 814.

Guided by these principles, we examine the evidence. James and Sally Kaply were married on October 27, 1939, and had eleven children. Final separation of the parties occurred on June 6, 1979.[1] Husband and wife had joint ownership of a 198-acre farm with a net value of between $276,650 and $372,000.[2] Wife had a $30,000 certificate of deposit in addition to household furniture and a 1970 Chrysler automobile. Although husband failed to disclose such in his answers to wife's interrogatories filed on September 19, 1979, wife discovered that husband had acquired an interest in the following assets all of which, except for the Minnesota property, the motor home, the fishing boat, the GMC pick-up truck and the back-hoe, he held jointly with a Mary Richards "Kaply":

| Property | Fair Market Value | Outstanding Mtg. | James' Contribution |
|---|---|---|---|
| Minnesota Real Estate | $ 23,000–$ 34,000 | | $ 23,000 |
| Florida Home | 100,000 | $ 30,000 | 9,000 |
| Florida Apartments | 75,000– 115,000 | 45,000 | 9,000 |

1. Husband left his marital home in 1972 and entered into a bigamous relationship with an Arlene "Kaply" in 1975, then with Mary Richards on September 6, 1978. Husband argues that the date of final separation was 1972, whereas, wife argues it was 1979. I.C. 31–1–11.5–11(a) (Burns Repl.1980) indicates that for purposes of disposition of property, "final separation" means the date of filing of the petition for dissolution of marriage. Such petition was filed on June 6, 1979. We are aware that prior to the Acts of 1980, P.L. 180, Sec. 2, § 31–1–11.5–11 referred only to final separation but did not include a definition of these terms. However, we are convinced that the purpose of this amendment was not to change the law, but only to express more clearly the original intention of the legislature. *Pierce Governor Co. v. Review Board of the Indiana Employment Security Division* (4th Dist.1981) Ind.App., 426 N.E.2d 700, 703. For these reasons, we reject Husband's contention that he was finally separated from his wife in 1972 merely because he maintained residences with two other women, when in fact he was still legally married to Sally, and his petition for dissolution of marriage was not filed until June 6, 1979.

2. Wife introduced an appraisal stating the fair market value to be $304,650. The farm was subject to liens totalling $28,000. On the other hand, there was some evidence that husband had considered a sale of the farm for $400,000.

| Property | Fair Market Value | Outstanding Mtg. | James' Contribution |
|---|---|---|---|
| 1978 Cadillac | $ 10,000 | | |
| 1977 Motor Home | 10,000 | | $ 10,000 |
| Speed Boat | 7,000 | | |
| 1968 Volkswagen | 750 | | |
| 1980 Camaro | 9,100 | | |
| 1977 GMC truck | 1,850 | | 1,850 |
| Back-hoe | 6,500 | | 6,500 |
| 1972 Dodge Van | 400 | | |
| 1 Honda Motorcycle | 2,630 | | |
| 2 Mopeds | 200 | | |
| Utility trailer | 1,100 | | |
| Fishing Boat | 200–$ 500 | | 200 |
| TOTAL | $247,730–$282,530 | $ 75,000 | $ 59,550 |

Husband also had $20,000 in savings, and proceeds from a life insurance policy of $2,200.[3] According to husband's responses to wife's interrogatories filed on September 19, 1979, husband received social security benefits of $412.00 a month, and a pension from SECO Steel of $521.89 per month.

Throughout their marriage, wife worked outside the home for only two weeks. She did not finish high school and has no marketable skills. Her primary responsibilities were caring for their eleven children, running the household, and helping the children with the farm duties. While they were living together, husband during the week apparently lived near the SECO Steel plant where he was employed, and came home only during the weekends at which time he did some farm chores. At the time of separation, wife was receiving neither social security nor pension benefits. Wife testified that the farm is her only source of present and future income and support, and that she did not wish to obtain interest in any of husband's property outside of Indiana; she merely wanted to retain her interest in the farm in order to preserve her livelihood.

The trial court awarded wife the 198-acre farm, subject to the $28,000 indebtedness and relinquishment of any claim for back support. The court also ordered her to pay her own attorney's fees of $6,277 and out-of-pocket expenses of $85. The court allowed husband to retain his interest in property located in Illinois, Minnesota and Florida, determining these assets to be valued at between $81,000 and $216,000.[4]

We are unable to join in husband's conclusion that the trial court's property distribution was in part a punishment for the two bigamous relationships. He admits that I.C. 31–1–11.5–11(b)(4) specifically requires the court to consider the conduct of the parties as it may relate to the disposition or dissipation of marital assets during the marriage. Husband's bigamous relationship with Mary Richards was inextricably involved in the accumulation of various assets during that period. It was proper to be considered in the context of his contribution to those assets. That relationship may

3. During the course of the divorce proceedings, husband transferred title to properties originally held jointly with Mary "Kaply" to Mary so as to give her sole ownership. On appeal, husband has not made the argument that because he transferred title to these properties to Mary Richards during pendency of the dissolution proceedings, they are not subject to distribution by the court. Rather, he argues that the properties, at no time, became marital assets as to Sally Kaply. Conversely, wife does not argue that by reason of any possible effort to conceal his interests, husband subjected the total value of those assets to inclusion in the distributable property.

4. Although it is not clear from the judgment how the court arrived at the $216,000 figure, it appears that this amount is the approximate total fair market value of property outside Indiana, in which husband held an individual interest, less any outstanding indebtedness. The $81,000 figure represents husband's cash contribution to the net value of those assets plus his savings and life insurance proceeds.

also have explained in part, husband's failure to report the existence of those assets although perhaps it may be guilelessly argued that the assets were not reported because husband in good faith thought them to be excludable from the marital assets.[5]

Husband argues that the court erroneously considered, as part of the marital assets the total value of the property in which he acquired joint interest through his efforts with Mary Richards, but in which he had a relatively minimal contribution.

■ Here, the trial court's memorandum reference to the total value of assets in which husband had obtained an interest does not compel the conclusion that the court considered that amount or its equivalent to be distributable to the parties. To the contrary, the reference in context indicates that the trial court was uncertain of the husband's precise interest in those assets but that his interest was at minimum the extent of his cash contribution and at most, full value if he had acquired total ownership by gift from Mary Richards "Kaply" or otherwise.

Even if we were to accept the premise that the trial court mistakenly included as part of the marital assets the total fair market value of the property husband owned jointly with Mary, such would not result in reversal. Husband was awarded all of that property. Therefore, if any monetary imbalance exists by reason of the trial court's inclusion of property values in excess of husband's interest, it is of arguable detriment only to the wife for she received no portion of that property or its value.

It is husband's contention that we must accept a valuation of $81,750 upon the assets distributed to him and that we must accept a valuation of $506,750 upon the total marital assets. Those amounts must be obtained by considering the assets distributed to wife at the highest valuation and those distributed to husband at the lowest valuation. To reach those figures it

is also necessary to exclude any increment in value attributable to assets acquired solely or jointly by husband after he left wife in 1972, and to disregard husband's pension and social security benefits.

Husband correctly states that under such formula his distributive share constitutes only 16% of the total value available for distribution.

■ There is no requirement that a trial court divide the property equally between the parties in order that the division be deemed just and reasonable. *Irwin v. Irwin* (2d Dist.1980) Ind.App., 406 N.E.2d 317. All appropriate factors must be considered in determining whether a property distribution is unreasonable as a matter of law.

■ There was evidence before the court that the wife has very little, if any, present or future earning capacity, that although she did not make a substantial financial contribution, she was primarily responsible for raising eleven children, for maintaining the role of homemaker, and for overseeing and assisting in the farm duties. There was also evidence of the disparate economic circumstances of the parties: the husband had income-producing properties in Minnesota and in Florida, and had social security and pension benefits. The wife, on the other hand, had no assets other than the farm, some farm equipment, a 1970 Chrysler, and a certificate of deposit. The court was entitled to weigh these factors in determining the appropriate division.

■ The court's disposition was not unreasonable nor against the logic and effect of the facts and circumstances before it. *In re Marriage of McDonald* (3d Dist.1981) Ind.App., 415 N.E.2d 75, 77. *See also In re Marriage of Gray* (3d Dist.1981) Ind.App., 422 N.E.2d 696; *Libunao v. Libunao* (1st Dist.1979) 180 Ind.App. 242, 388 N.E.2d 574; *In re Marriage of Lewis* (3d Dist.1977) 172 Ind.App. 463, 360 N.E.2d 855. *But cf.*

5. Wife petitioned the trial court to hold husband in contempt for perjury with regard to his failure to disclose these assets. The trial court

entered the final decree without ruling upon the petition, stating that "it does not now require determination." Record at 109.

*Swinney v. Swinney* (2d Dist.1980) Ind. App., 419 N.E.2d 996 (held 97% to wife an abuse of discretion), *trans. denied,* 426 N.E.2d 658.

The judgment is affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.