Sheri Lynn BENDA,
Petitioner–Appellant,

v.

Ronald Lewis BENDA,
Respondent–Appellee.

No. 11A01–8907–CV–250.

Court of Appeals of Indiana,
First District.

April 23, 1990.

Thomas & Thomas, Brazil, for petitioner-appellant.

Larry J. Wagner, Effner, Wagner & Crawford, Terre Haute, for respondent-appellee.

BAKER, Judge.

## STATEMENT OF THE CASE

Petitioner-appellant, Sheri Lynn Benda (Sheri), appeals a judgment entered on her petition for the dissolution of her marriage to respondent-appellee, Ronald Lewis Benda (Ron), and from the trial court's finding her in contempt.

We affirm.

## STATEMENT OF THE FACTS

Sheri and Ron were married on July 21, 1984, and were separated on March 31, 1988. The couple had two children during their marriage. On March 31, 1988, Sheri filed a petition for dissolution of marriage in the Vigo Superior Court. On the same day, Sheri requested temporary maintenance, child custody and support, attorney fees and a restraining order. The Vigo Superior Court issued the restraining order and set the other matters for further hearing.

On April 6, 1988, the parties entered into a preliminary agreement whereby Sheri was granted temporary custody of the parties' two children, support and attorney fees. Ron was granted visitation. Both parties agreed to remain in Vigo County unless they agreed otherwise. On April 11, 1988, Ron filed a motion for a change of venue from Vigo County and the case was venued to Clay County. On June 16, 1988, Ron filed an affidavit for rule to show cause alleging that Sheri violated the temporary agreement between the parties and requesting the court to order Sheri to appear before the court to show cause why she should not be held in contempt of court. The court ordered Sheri to appear at a hearing scheduled to determine both the contempt issue and Sheri's claim for temporary maintenance and attorney fees.

On July 27, 1988, Ron filed a motion to secure attendance of the minor children at the hearing. Ron filed this motion because Sheri had removed the children from Indiana, taken them to New Jersey, and indicated that she was not going to return the children to Indiana and Ron would be denied his visitation rights awarded him under the terms of the temporary agreement. The Clay Circuit Court ordered Sheri to return the children to Indiana to attend the hearing. On August 3, 1988, Sheri instituted proceedings in New Jersey where she requested the New Jersey court assume jurisdiction and award her, inter alia, permanent custody of the children.

On August 5, 1988, the Clay Circuit Court conducted a preliminary hearing where Sheri appeared, without the children, and requested the court to stay the matter pending the New Jersey court's determination of jurisdiction. The Clay Circuit Court, having no evidence of the New Jersey proceedings before it, denied Sheri's request. Sheri filed a motion to reconsider with the Clay Circuit Court which the court denied. The Clay Circuit Court determined on August 11, 1988, that based on its communication and subsequent agreement with the New Jersey court concerning jurisdiction, Indiana had jurisdiction over the matter pursuant to the Uniform Child Custody Jurisdiction Act. Further, the Clay Circuit Court found Sheri in contempt of court because she "willfully and intentionally changed her place of residence from Vigo County to the State of New Jersey on June 25, 1988. [Sheri] failed to return the children to Indiana as ordered by the court and indicates no intention of returning the children or of every [sic] residing in Indiana." *Record* at 121.

On August 17, 1988, Sheri filed a motion to dismiss in the Clay Circuit Court alleging that Indiana lacked jurisdiction over the cause because the New Jersey court had assumed jurisdiction. In denying Sheri's motion, the Clay Circuit Court stated in part "That after conference with Judge Friend in Superior Court, Morris County, New Jersey, it was unanimously decided and agreed that jurisdiction of this cause

vested in Clay County, Indiana." *Record* at 130.

On December 2, 1988, the Clay Circuit Court held a final hearing on the dissolution, including a determination of custody of the couple's two children. Sheri did not appear at the final hearing. After ordering a dissolution of Sheri and Ron's marriage, the Clay Circuit Court awarded custody of the children to Ron with supervised visitation rights in Sheri. The court further awarded Ron all personal property then in his possession including three vehicles. The court also gave Ron the marital home as long as he held Sheri harmless on the outstanding mortgage. Ron was also deemed entitled to the insurance proceeds, if any, resulting from a fire loss on the home occurring immediately prior to the couple's separation. The trial court further determined that Ron was entitled to his interest in a pension plan he participated in through his employer. Sheri was awarded all personal property then in her possession. The court determined Ron was responsible for all the couple's debts except the three that were incurred in Sheri's name only. The court also ordered the couple's tax refund checks and an insurance premium refund be applied toward reducing the couple's debts. Sheri appeals the Clay Circuit Court's decision regarding custody, its division of the marital property and its finding that Sheri was in contempt of court.

## ISSUES

On appeal, Sheri raises four issues which we restate as three:

I. Whether the Clay Circuit Court erred in retaining jurisdiction over the custody issue.

II. Whether the Clay Circuit Court erred in finding Sheri in contempt of court.

III. Whether the Clay Circuit Court abused its discretion in dividing the marital property.

## DISCUSSION AND DECISION

### I.

■ For her first argument, Sheri asserts the Clay Circuit Court erred in exercising jurisdiction over the custody issue because the New Jersey court assumed jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA). We disagree.

It is undisputed that Indiana obtained jurisdiction over these proceedings when Sheri initially filed her dissolution petition in Indiana. The applicable provision of the UCCJA provides:

Sec. 3. Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, ...

IND.CODE 31–1–11.6–3. A child's home state "means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent, for at lease six (6) consecutive months, ..." IND.CODE 31–1–11.6–2(5). The record reflects that at the time Sheri initiated the dissolution proceedings, she, Ron, and the two children were all residing in Indiana and had been for at least the six preceding months. Accordingly, at the time the proceedings were initiated, Indiana was the children's home state which properly vested the Clay Circuit Court with jurisdiction under the UCCJA.

The question then becomes whether Indiana ceded or should have ceded its properly obtained jurisdiction to New Jersey once Sheri instituted proceedings in the latter state. Indiana and New Jersey have both adopted the UCCJA.[1] The sections applicable to the custody proceedings in the present case provide:

(a) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another

1. IND.CODE 31–1–11.6–1 to 31–1–11.6–25 (referred to in this state as the Uniform Child

Custody Jurisdiction Law); N.J.S.A. 2A:34–28 to 2A:34–52.

state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

.    .    .    .    .

(c) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 19 through 22 of this chapter. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

IND.CODE 31–1–11.6–6 (footnote omitted); N.J.S.A. 2A:34–34. Section (a) of the statute applies to the New Jersey court because a petition was filed in that court while a petition was already pending in a court of another state. Section (c) of the statute applies to the Indiana court because after it assumed jurisdiction in the matter, it was informed that a proceeding was commenced in a court in another state. The effect of both sections is to require that once one court is informed of proceedings in the other, the two must communicate with each other to determine which court should properly assume or retain jurisdiction.

The record in the present case reflects that both the Indiana and the New Jersey courts complied with its obligation under the UCCJA. After conferring, the courts unanimously agreed that Indiana should retain jurisdiction over the custody dispute.

Both Indiana and New Jersey recognize the purposes of the UCCJA as:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states; and

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.

IND.CODE 31–1–11.6–1; N.J.S.A. 2A:34–29. For this court to determine that the Clay Circuit Court erroneously exercised jurisdiction would be to promote jurisdictional competition, discourage cooperation between courts of different states, encourage continuing controversy over child custody, encourage abduction of children to obtain custody awards, and limit the exchange of information and mutual assist-

ance between Indiana courts and courts of other states. We will not contravene the clear purposes and intent of the UCCJA or of our legislature in enacting the UCCJA in so blatantly a fashion as Sheri invites us to do. In fact, we believe Sheri's conduct throughout these proceedings approaches the level of reprehensibility. She initially availed herself of the jurisdiction of the Indiana courts, she blatantly violated the terms of the preliminary agreement entered in Indiana by leaving the state with the children, she refused to bring the children to the preliminary hearing as ordered by the court, she failed to appear at the final hearing, she initiated proceedings in New Jersey with full knowledge that the case was pending in Indiana, and then challenged the jurisdiction of the Indiana courts. We refuse to affirm such cat and mouse tactics when the well-being of two young children is at stake.

## II.

Sheri next contends the trial court erred in finding her in contempt of court for willfully and intentionally changing her place of residence and for ·removing the children from Indiana. Sheri argues the trial court failed to consider alleged extenuating circumstances which excuse her violation of the preliminary agreement and the court order.

■ The determination of whether to hold a party in contempt of court is a matter left to the discretion of the trial court. *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23. This court will not reverse a trial court's decision for an abuse of discretion unless that decision is against the logic and effect of the facts and circumstances before the court, together with any reasonable inferences arising therefrom. *Id.* On appeal, this court will not reweigh the evidence or judge the credibility of the witnesses and will consider only the evidence most favorable to the prevailing party. *Id.*

■ To be held in contempt of a court's order, a person must be subject to an order or decree directing that person to either do or not do something. *Id.* In the present case, Sheri was subject to both a court

order and a preliminary agreement. In the court order, Sheri was directed to bring the children to the hearing. It is undisputed that Sheri did not comply with this court order. The preliminary agreement was approved by the court and became an order of the court. Pursuant to the terms of the preliminary agreement, Sheri agreed to remain in Vigo County. It is also undisputed that Sheri violated the terms of the preliminary agreement by leaving Vigo County to reside in New Jersey. Sheri argues, however, that her disobedience of the court's order was justified.

■ We agree with Sheri's contention that there may be some circumstances which justify the violation of a court's order. *Id.* The trial court heard extensive testimony on Sheri's living arrangements in both Vigo County and in New Jersey. It also heard several allegations from Sheri concerning the factors motivating her violation of the agreement and the court order. In all cases we presume the trial court considers all the evidence. *Pavach v. State* (1971), 149 Ind.App. 293, 271 N.E.2d 896. Outside of her bare allegation, Sheri has not presented us with any reason to believe the trial court did not consider the evidence before it. The trial court found Sheri's explanations for her actions were not credible and, without reweighing the evidence or judging Sheri's credibility as a witness, we decline to disagree.

## III.

Sheri finally contends the trial court abused its discretion in awarding more than half the marital property to Ron. Sheri cites *Euler v. Euler* (1989), Ind.App., 537 N.E.2d 554, in which this court determined that when a trial court deviates from the statutory presumption in favor of an equal distribution of marital property, IND. CODE 31-1-11.5-11(c), the trial court must set forth the basis upon which it deviated from the fifty-fifty presumption. *In re Marriage of Davidson* (1989), 540 N.E.2d 641. Sheri argues the trial court in the present case did not divide the marital property evenly and, therefore, erred in

failing to set forth its reasons for the unequal division.

■ While Sheri correctly interprets this court's decision in *Euler*, she fails to persuade us that the principles enunciated in that case were violated. Sheri did not appear at the final hearing to present any evidence of valuations of the marital property. Ron, on the other hand, appeared at the hearing and presented evidence as to his assessment of the marital property and the debts incurred by each party. We will presume the trial court acted correctly in dividing the property unless we are presented with evidence to the contrary. *Baker v. Baker* (1986), Ind.App., 488 N.E.2d 361.

■ In the present case, the trial court was presented with evidence that due to the fire loss on the house, its market value was approximately $20,000. The outstanding balance on the real estate mortgage was approximately $40,000. Ron explained to the trial court that his fire insurance carrier was investigating his claim and had indicated that it might deny coverage. Ron also presented evidence that Sheri had incurred debts totalling $3,650. Ron paid several other debts incurred at various medical facilities and business establishments since the filing of the dissolution action. Ron also testified that since the commencement of the proceedings, he paid $2,263.91 on the $40,000 real estate mortgage and was continuing to pay on outstanding consumer debts. Ron presented evidence that Sheri was employed at the time of trial and was also receiving supplemental monthly income from the National Guard. There was evidence before the trial court that Ron had incurred debt in home improvement loans and for car repair. Ron also testified that in addition to the $2,000 he had paid his Indiana lawyer at the time of trial, he expended approximately $15,000 to obtain legal representation in the proceedings initiated by Sheri in New Jersey. Ron said he owned three

vehicles and was a participant in a pension plan where he was employed. Ron also presented evidence that he was in possession of three refund checks: two tax checks and an insurance premium refund.

Based on all the evidence presented by Ron, including the evidence of the many debts incurred by the couple, we cannot say that it is clear from the record that the division of marital property was less than fifty-fifty. While it appears on the one hand that Ron was awarded more property, he was also held responsible for nearly all the debts. It is reasonable to infer from the evidence before the trial court that any value derived from the marital assets Ron received was cancelled out by the debts he was ordered to pay. On appeal, Sheri makes the bald assertion that the trial court did not divide the property evenly.[2] Absent any specific indication of error on the part of the trial court, we cannot discern any reason to disturb its decision.

Judgment affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.

---

**2.** Sheri failed to require, pursuant to Ind.Trial Rule 52(A), that the trial court enter specific findings of fact or conclusions of law which would have aided this court in determining with greater precision whether the property was divided evenly. Absent such findings and conclusions, we believe the evidence in the record indicates the trial court's decision was in accordance with the logic and effect of the facts and circumstances before it.