In re the MARRIAGE OF Roger Dale COOMER, Appellant–Respondent,

and

Priscilla Coomer, Appellee–Petitioner.

No. 03A04–9304–CV–149 [1].

Court of Appeals of Indiana,
First District.

Nov. 2, 1993.

---

1. This case was transferred to this office on September 15, 1993 by direction of the Chief Judge.

Julia Ann Caudill, Columbus, for appellant-respondent.

R. Kent Witte, Columbus, for appellee-petitioner.

ROBERTSON, Judge.

This is an appeal from a decree which dissolved the marriage of Roger D. Coomer, respondent-appellant, and Priscilla Coomer, petitioner-appellee. Upon appeal, the husband contends that the award of property in favor of the wife exceeds the value of the marital assets; that the trial court's findings, which were made to justify an unequal division of the marital property, do not support the division and erroneously take into account the husband's fault; and that the requirement that the husband continue to provide medical insurance for the wife through COBRA for a period of five years cannot be affirmed as an award of maintenance.

When reviewing a claim that the trial court improperly divided the marital property, we must decide whether the trial court's decision constitutes an abuse of discretion. *Van Riper v. Keim* (1982), Ind. App., 437 N.E.2d 130. We consider only that evidence most favorable to the trial court's disposition of the property. *Benda v. Benda* (1990), Ind.App., 553 N.E.2d 159, *trans. denied.* We presume the trial court followed the law and made all the proper considerations in reaching its decision. *White v. White* (1981), Ind.App., 425 N.E.2d 726. We will reverse only if there is no rational basis for the award, that is, if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *In re the Marriage of Salas* (1983), Ind.App., 447 N.E.2d 1176.

The husband argues first that the division is an abuse of discretion because the trial court made an award to the wife in excess of the marital estate and failed to take into account the extent of the parties' debt. He cites *Salas, id.,* and *Wells v. Wells* (1986), Ind.App., 489 N.E.2d 972.

At the provisional and final hearings, the husband offered little evidence of valuation. Indeed, we have derived the value of much of the parties' property from the documents which the wife introduced showing the values placed upon the various assets during bankruptcy proceedings a year earlier. Insofar as these values are the most favorable to the trial court's distribution, we have adopted them.

The Coomers owned a house, valued at $50,000.00; a 1987 Chevy van, valued at $9600.00; a 1983 Cadillac, valued at $2800.00; and, household and personal property, with a total value of $5440.00. In addition, through his employment, the husband had acquired a vested interest in two pension annuities and a defined contribution pension with present values of $6,525.31, $28,316.25 and $2,131.66 for a total of $36,973.22. Through her work at Wal-mart, the wife had acquired a profit sharing account with employer contributions totaling $1,054.23. The statement she introduced into evidence to value the account indicates that the account is "20% vested;" the wife cannot remove the money from the account unless she terminates her employment with Wal-mart. At that time, she would be entitled to 20% of the account's value or $210.85.

The trial court awarded the parties whatever household and personal property they possessed at the time of the decree. There is no evidence in the record from which to place a value upon the household and personal property in each party's possession. Consequently, we have not included the household and personal property distribution in our calculation of the percentage distribution.

The trial court did not award either party any portion of the wife's profit sharing account at Wal-mart. For purposes of ana-

lyzing the husband's contention that the award to the wife is in excess of the marital assets, the wife's profit sharing account would only serve to make the total amount of marital assets subject to division greater. Assuming that it has vested and is presently subject to division, a recognition that it was effectively awarded to the wife does not change the percentage distribution. The wife received nearly 72% of the marital assets, exclusive of the medical insurance coverage, while the husband received about 28% of the assets. The present value of the parties' assets for which evidence of value was offered totalled $99,584.07.

The evidence reflects that the parties had liabilities totalling $79,622.43 at or near the date of dissolution, December 21, 1992. The trial court awarded the house to the wife, subject to a principal mortgage balance of $37,695.19; however, in a provisional order, the husband had been ordered to pay a delinquency on the house of $12,644.76. He had not made any payment toward the first mortgage on the house by the date of the final hearing and the bank had threatened foreclosure. The trial court ordered the husband to pay this debt in the final decree. We recognize that some of this debt will be attributed to principal and that the amount of debt distributed to the wife is actually less than the principal balance on the loan. The husband, however, made no effort to prove how much.

The husband testified at the provisional hearing that the wife could have the house and he would continue to pay the bills he was already paying. The trial court ordered in the final decree that the husband pay these bills. They include a debt of $6,184.40 to Capital Finance representing a second mortgage on the real estate, and a garnishment of $92.41 per week as a consequence of the parties' bankruptcy. The amount garnished from the husband's pay each week represents a settlement of 5% of unsecured claims which include a judgment of $1200.00, the wife's student loan, and a debt of $5965.00.

The wife proved that in 1983, she suffered a broken jaw when the husband struck her in the face and propelled her into a refrigerator. As a consequence of this incident, the wife suffers from neck, head and back pain, and is being treated for "a rather advanced degenerative condition of the TMJ's" (Temporomandibular joints). She offered evidence of outstanding balances with a chiropractor and dentist of $179.20 and $1958.00 respectively and a pharmacy bill of $177.64. The wife also offered into evidence a letter from the dentist who was treating her for TMJ that she would need $2500.00 worth of treatments for her condition. The trial court did not specifically distribute these debts, although he did order the husband to maintain health insurance on the wife for a period of five years. There is no evidence in the record as to what the cost of insurance on the wife will be for the husband.

Lastly, the trial court ordered the husband to pay $768.00 of the wife's attorney's fees. Twelve hundred ten dollars remained to be paid to the wife's attorney on the date of the final hearing. The husband was represented by counsel during the provisional proceedings but was not represented at the final hearing. He did not offer any evidence of the amount if any he owed his former attorney.

■ When all of the parties' liabilities which were proven are added and apportioned pursuant to the final decree, the wife received 50.8% of the debt while the husband was ordered to pay 49.2% of the debt. The final decree crafted by the trial court establishes that the trial court considered all of the debt proven by the parties and, exclusive of the award of COBRA insurance coverage, which we have determined to be maintenance, did not make an award in excess of the *value* of the marital estate. *See In re the Marriage of Buntin* (1986), Ind.App., 496 N.E.2d 1351, 1354, *trans. denied* (Law is that award must not be in excess of the value of the marital estate, not the net worth); *Armstrong v. Armstrong* (1979), 181 Ind.App. 343, 391

N.E.2d 855, 857 (Any award over and above the actual physical assets of the marital relationship must represent some form of support or maintenance). When an unequal division of the marital property is properly accomplished, the law does not prevent an award in excess of the net marital estate. *See e.g., In re the Marriage of Sloss* (1988), Ind.App., 526 N.E.2d 1036 (Distribution of net assets of $32,575.96 and net liabilities of $103,509 not in excess of value of marital estate). *Cf. Norton v. Norton* (1991), Ind.App., 573 N.E.2d 941. The trial court is not required to calculate the net liability when making a property distribution. *Sloss*, 526 N.E.2d at 1040; *Wells*, 489 N.E.2d at 976. The only requirement of distribution of assets and liabilities is one of reasonableness. *Sloss*, 526 N.E.2d at 1040.

The husband argues that the unequal division of the marital assets fashioned by the trial court is an abuse of discretion because it was justified, at least in part, on the basis of fault, citing *R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298. The trial court made two findings in support of the distribution to the wife, which the court characterized as 60% of the net assets: "Petitioner's earning power is greater than that of Respondent;" and, "Petitioner's health has been impaired due to years of abuse at the hand of Respondent."

 The trial court found that an unequal division should be effected in favor of the wife in part because the wife's health had been impaired as a consequence of years of physical abuse from the husband. Indiana Code 31–1–11.5–11(c) provides that the presumption an equal division of marital property would be just and reasonable "may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable ..." Among the factors which may be considered is the "conduct of the parties during the marriage *as related to the disposition or dissipation of their property*." Thus, while a party's conduct or fault in the breakup of the marriage is not a proper ground for an unequal division

of the marital property, *R.E.G.*, 571 N.E.2d 298, a party's conduct during the marriage "as related to the disposition or dissipation of their property" is. *See e.g., Planert v. Planert* (1985), Ind.App., 478 N.E.2d 1251 (Husband's drinking problem major contributing factor to business' failure; distribution giving wife real estate, household goods, automobile and real estate taxes debt while awarding husband cemetery plots valued at $400.00 and debts of business just and reasonable in light of "conduct of parties" factor); *Kaply v. Kaply* (1983), Ind.App., 453 N.E.2d 331 (Husband's bigamous relationship which was "inextricably involved in the accumulation of various assets" properly considered in the context of his contribution to those assets as marital assets subject to division, affirming distribution heavily in favor of wife as just and reasonable).

The wife offered testimony that she had been abused repeatedly over the course of her relationship with the husband, and that he had broken her jaw in 1983. The husband admitted that he did strike his wife in 1983, causing her to fall into the refrigerator and break her jaw. Although the wife did not offer conclusive proof that all of her physical ailments were caused by the husband, the husband did admit that his conduct precipitated the wife's broken jaw. The wife's dentist opined that TMJ is usually caused by trauma to the jaw; the evidence thus reasonably supports the inference suggested by the wife, that the TMJ from which she suffers and which will require continuing medical care in the future, was caused by the husband's conduct during the marriage.

The wife offered evidence showing the cost of her medical care at the time of the dissolution and anticipated future expenditures necessitated by the husband's conduct during the marriage. When considered in light of the evidence offered by the wife relating to the other factors listed in I.C. 31–1–11.5–11(c), specifically, the disparity in the parties' earning abilities, and that the wife had persuaded her son and his girlfriend to move back home so that she would have their rental income to meet her

living expenses, the wife has shown it to be just and reasonable to effectuate a division which takes the husband's conduct during the marriage and her impaired health as a consequence of it into account. The trial court recognized that the wife's standard of living after the marriage will be lessened as a consequence of the husband's conduct during the marriage in that a good share of her income will be devoted to her medical care and effectuated an unequal division of the marital assets. Upon this record, we cannot say that to do so was an abuse of discretion.

■ Nonetheless, we are unable to affirm the distribution upon the findings made by the trial court for two reasons. First, the trial court's decree establishes that the trial judge believed he was making a 60/40 split of the assets, a far different judgment than the one he actually entered. The value of each of the assets was not in dispute.

Second, the trial court found that the petitioner's earning power was far greater than that of the respondent, husband. Although the earning ability of the parties is a factor which may rebut the statutory presumption that an equal division of the marital property would be just and reasonable if relevant evidence is presented by a party, Ind.Code 31–1–11.5–11(c)(5), as we have intimated, the evidence is uncontroverted that the husband's earning power far exceeds the wife's, who was the petitioner. The wife has no specialized training or education and averages $137.48 gross per week from her employment at Wal-mart. The husband has gross income of $628.00 per week from employment at Arvin Industries.

Both the husband and the wife treat this finding as if it said what the court probably intended and the evidence reflects; that the husband-respondent's earning ability is far greater than the wife's, and thus, the wife should receive a greater share of the marital property. But, even were we to accept that the finding contains only a scrivener's error, the finding was still made upon the mistaken belief that the deviation from an equal division was only 10%. The trial

court fashioned its own distribution, refusing to adopt in its entirety the wife's request for 60% of the husband's pension benefits. Consequently, we can only speculate as to the trial court's intent in shaping the distribution; the court may have intended to award the wife 60% of the marital property and nothing more, or it could have intended to award the wife the assets as they were divided and simply miscalculated the percentage. Whatever the case, the trial judge should take a second look at this distribution and enter findings which accurately reflect his intention and, if necessary, amend his distribution.

The final issue before us concerns that portion of the decree which directs the husband to maintain insurance coverage on the wife for a period of five years. No evidence was offered by either party of the cost to the husband to obtain the coverage under COBRA. It is thus impossible to discern whether, with the award of COBRA insurance coverage, the final distribution to the wife would exceed the value of the marital estate. Moreover, it is apparent from the judgment of the trial court that the amount to be paid for the insurance will come from the husband's future income, and, thus, resembles an award of maintenance. However, the trial court made no findings other than the finding that the wife suffers from impaired health to support the award.

■ Indiana Code 31–1–11.5–11(e)(1) authorizes a court to find that maintenance for a spouse is necessary during a period of incapacity if the court finds the spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support herself is materially affected. The decisions of Indiana's appellate courts have consistently construed this provision and its predecessor, I.C. 31–1–11.5–9, to permit an award of maintenance only if the court finds a spouse to be so physically or mentally incapacitated that the spouse's ability to support herself is materially affected. *See e.g. In re the Marriage of McManama* (1980), 272 Ind. 483, 399 N.E.2d 371, 372; *York v. York* (1985), Ind.App., 472 N.E.2d 1308, 1309,

*trans. denied.* Absent a showing of physical or mental incapacitation of the spouse, the court has no authority to make an award of maintenance. *Wells,* 489 N.E.2d at 976.

■ There is no evidence in this cause nor any finding by the trial court in its judgment that the wife was physically or mentally incapacitated to the extent that her ability to support herself was materially affected. While the record shows, as the trial court found, that the wife's health has been impaired by the conduct of the husband, there is no evidence that the impairment, rather than the wife's lack of skills or education, affected her ability to support herself. Inasmuch as the award to the wife of health insurance coverage was not based upon the evidence or findings, it too must be reversed.

Judgment reversed and remanded to the trial court with instructions that the trial court reconsider the property distribution upon the evidence presented and either effectuate an equal division of the property or redistribute the property and enter findings justifying an unequal division.

NAJAM, J., concurs.

HOFFMAN, J., dissents with separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. The decree of dissolution was entered on December 21, 1992. The praecipe, along with a request for extension of time within which to file the praecipe, was filed on February 1, 1993. In his request for an extension, Roger alleged that he did not receive a copy of the decree until January 2, 1992. Ind. Trial Rule 72(E) states:

> "Effect of Lack of Notice. Lack of notice, or the lack of the *actual* receipt of a copy of the entry from the Clerk shall not affect the time within which to contest the ruling, order or judgment, or authorize the Court to relieve a party of the failure to initiate proceedings to contest such ruling, order or judgment, except as provided in this section. When

the mailing of a copy of the entry by the Clerk is not evidenced by a note made by the Clerk upon the Chronological Case Summary, the Court, upon application for good cause shown, may grant an extension of any time limitation within which to contest such ruling, order or judgment to any party who was without *actual knowledge,* or who relied upon incorrect representations by Court personnel...." (Emphasis supplied.)

Here, Roger admitted that he received actual notice. Accordingly, the trial court did not have authority to allow an extension of time within which to file the praecipe.

Further, the trial court was without the power to resurrect the time period by ordering a late praecipe to be considered timely. *Clausen v. State* (1993), Ind., 622 N.E.2d 925 (parties and trial court cannot recreate record to include an objection which was not timely made; court on review "will only examine what actually transpired").

The praecipe was not timely filed. The failure to timely file a praecipe is a jurisdictional impediment to review requiring dismissal of the appeal. *International Fidelity Ins. Co. v. State* (1992), Ind.App., 602 N.E.2d 160, 161, *trans. den.* The appeal should be dismissed.