## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

Oct 17 2018, 7:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rachele L. Cummins
Smith Carpenter Fondrisi
Cummins & Schulte, LLC
Jeffersonville, Indiana

ATTORNEY FOR APPELLEE

Rebecca L. Lockard
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wendy T. Broady,<br>*Appellant-Respondent,*<br><br>v.<br><br>David W. Broady,<br>*Appellee-Petitioner* | October 17, 2018<br><br>Court of Appeals Case No.<br>18A-DR-309<br><br>Appeal from the Clark Circuit<br>Court<br><br>The Honorable Bradley B. Jacobs,<br>Judge<br><br>Trial Court Cause No.<br>10C02-1608-DR-436 |

**Baker, Judge.**

[1] Wendy Broady (Wife) appeals the trial court's order dissolving her marriage to David Broady (Husband). Wife argues that the trial court erred by dividing the marital estate equally, by ordering that both parties pay their own living expenses during the pendency of the action, and by awarding Husband the cemetery plot that she brought to the marriage. We find no error aside from the portion of the order regarding Wife's cemetery plot. We therefore affirm in part, reverse in part, and remand with instructions to amend the dissolution order to reflect that Wife is awarded her own cemetery plot.

## Facts

[2] Husband and Wife got married on February 21, 2012. Both parties had been married previously. Husband has a son from his previous marriage, which ended after his former wife died, and Wife adopted the child after she married Husband.[1]

[3] Wife brought a number of assets to the marriage, including life insurance and retirement accounts she had inherited from her first husband following his death and two 401(k) accounts. Husband also brought assets to the marriage, including a pension plan and a 401(k) account. At the time of the marriage, Husband owned a home; Wife later paid off the mortgage on that home in the amount of $46,514.

---

[1] She did not, however, request any parenting time with the child after the marriage was dissolved. She has not seen her son since August 2016.

[4]     Shortly after they got married, the couple began building a home.[2]  They took out a mortgage to finance the residence.  Additionally, without Husband's knowledge, Wife accepted a loan in the amount of $250,000 from her mother to help pay for the house.  The amount of the mortgage plus the debt to Wife's mother exceeds the current value of the property.  Over the course of the four-year marriage, Wife's parents gifted the couple a total amount of $104,000 ($26,000 per year).  During most of the marriage, Wife did not work.[3]  Husband worked full-time during the marriage, earning approximately $800 per week; the couple used his income to pay some of their bills.

[5]     In June 2015, Wife was diagnosed with breast cancer.  Since that time, she has undergone chemotherapy, a double mastectomy, and reconstructive surgeries.  She attempted to return to work later in 2015[4] but was unable to maintain employment because of her health issues.  At the dissolution hearing, Wife testified that her cancer had spread and she will continue to receive treatment.  During the parties' marriage, she was on Husband's health insurance plan.  She requested that he continue to be responsible for providing COBRA health insurance for her as long as possible.

---

[2] Their second home was built on the same parcel of real property that Husband's premarital residence was located on.  Husband owned the real property.

[3] It is unclear in the record whether Wife was employed prior to the marriage and, if so, where she worked.

[4] At that time, she was trying to work part-time as a cashier at Kohl's.

[6] On August 19, 2016, Husband filed a petition to dissolve the marriage. At that time, he was living in the home he brought to the marriage and she was living in the home they had built; each was paying the expenses for the respective home in which they were living. Wife asked that the trial court deviate from the presumptive equal division of property, instead awarding her 80% and Husband 20% of their assets. Each party had brought a burial plot to the marriage from their prior marriages; each asked to retain the one that they brought to the marriage.

[7] The trial court held an evidentiary hearing on August 10, 2017, and on November 15, 2017, it entered a dissolution decree. In pertinent part, the trial court found and ordered as follows:

> 24. The Husband testified that he did not know that the Wife had taken loans for the residence [that they built].
>
> 25. The Husband testified that the Wife is the one that wanted the residence built . . . , and that if he knew there were outstanding loans to her parents to build the residence, he would not have been in agreement with the building of the residence.
>
> 26. That the Wife has not made any payments to her parents for the loans.
>
> 27. That despite the fact that the Wife has outstanding loans to her parents, her parents continued to gift money every year, instead of applying those payments to the loan.
>
> ***
>
> 29. That the letters and the checks provided as proof of the loan were revised after the filing of the dissolution. That

there was no lien or promissory note entered into at the time the checks were written.

30. That there was a repayment plan, but no repayment has been made.

31. That the Wife provided no evidence as to the value of the investments and retirement plans prior to marriage.

32. That the Wife provided no evidence showing that there had not been contributions to the investments and retirements during the marriage.

***

37. That the Wife has over $600,000.00 in investments and retirement, but did not make payments on her outstanding medical bills nor the loan that she states her parents have given her.

38. That the Wife is requesting the Court to allow her to retain all her investments because she owned them [prior to the marriage] but wants the Court to divide all the debt equally between the parties.

39. The Wife is asking the Court to take into account the Husband had pension and retirement accounts before the marriage, but is not taking into account that the Husband had equity in his home before [the] marriage and owned the property that both residences are built upon before [the] marriage.

***

42. That there would be no debt of the marriage if the Wife had paid the debt when her investments came due.

43. There would be no outstanding medical debt if the Wife had paid those debts when they came due.

44. The Wife continued to use credit cards when she had money in investments and bank accounts.

45. That the Wife did not make payments on the bills and therefore incurred additional interest and late charges which increased the debt of the marriage, while having money available to pay the bills as they came due.

\*\*\*

56. That the Wife has had access to a great share of the marital pot during the pendency of this matter.

Conclusions of Law

\*\*\*

6. Here, [Wife] has severe health issues which prevent her from working. Additionally, [Husband] receives $804 per month[5] to support the child. Based on these circumstances, the Court believes that setting child support in a Guideline amount would be unjust and instead sets support in the amount of $0.00 per week.

\*\*\*

8. That [the] Court finds that the presumption of an equal distribution of the marital estate has not been rebutted by the relevant evidence presented by the Wife, in that

   a. That the Husband's income supported the family.

   b. That the Wife co-mingled her assets during the time of the marriage.

---

[5] Following the death of the child's biological mother, the child receives a monthly death benefit of $804.

c.    That the Wife took on debt in the marriage that the Husband was not aware [of] and she took on that debt when she had the ability to pay the expenses . . .

d.    That the Wife's Family gifted money to both the Husband and Wife during marriage.

e.    That the Husband owned the [real property] that both [residences] are on [before the marriage]. . . .

f.    That both parties had assets prior to the marriage.

g.    That there is no evidence as to the value of the premarital assets of either party.

h.    That the Husband is the sole custodian and care giver to the child of the marriage.

9.    That there is not sufficient evidence to show that the payment by [Wife's mother] was a loan, instead of a gift.

Appealed Order p. 4-10. The trial court ordered that each party would retain the residence in which they were living, that Husband "shall retain possession of the cemetery plots," *id.* at 11, that Wife would be responsible for all her debts, and that Wife would make an equalization payment to Husband in the amount of $299,420. Wife now appeals.

# Discussion and Decision

# I. Division of Marital Estate

[8]    Wife first argues that the trial court erred by dividing the marital estate equally between her and Husband, maintaining that she should have received 80% of

the estate. She argues that the trial court erred because, had it focused on the following three issues, it would have awarded her a greater share of the estate: (1) her health and inferior earning capability; (2) her difficulty procuring health insurance; and (3) the amount of property that each spouse brought into the marriage and/or the amount of property in the marital estate that was acquired through gift or inheritance.

When dividing a marital estate, the presumption is that the estate should be divided equally. The presumption may be rebutted by evidence that an equal division would not be just and reasonable. Ind. Code § 31-15-7-5. Among other things, the following factors may be considered:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
>> (A) before the marriage; or
>>
>> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:

> (A)  a final division of property; and
>
> (B)  a final determination of the property rights of the parties.

*Id.* The party challenging the trial court's property division must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. *E.g.*, *Harrison v. Harrison*, 88 N.E.3d 232, 234 (Ind. Ct. App. 2017), *trans. denied*. This presumption is one of the strongest presumptions on appeal. *Id.* at 234-35. In considering the trial court's order, we may neither reweigh the evidence nor judge witness credibility, and will consider only the evidence most favorable to the trial court's decision. *Id.* at 234.

## A. Wife's Health

[10]  Wife first contends that the trial court should have awarded her a greater share of the estate because of her significant health issues. According to Wife, her poor health limits her ability to pay for her living expenses and medical bills, primarily because she is unable to maintain employment. She notes that Husband is currently healthy and employed.

[11]  The record reveals that although Wife was unable to maintain employment, she had multiple sources of income, including gifts from her parents and her investments. As Husband notes, even with the equal distribution of the estate, Wife has assets totaling over $299,000 and a promise of continued financial support from her parents. Wife's arguments on this issue amount to a request

that we reweigh the evidence, which we may not do.  The trial court's decision to divide the estate equally, even when factoring in Wife's medical issues, is based on evidence in the record and is neither unjust nor unreasonable.[6]

# B.  COBRA

Wife next argues that the trial court should have deviated from the presumed equal division of the marital estate by ordering that Husband should pay for her COBRA health insurance.  She argues that her cancer "makes it unlikely she will be able to retain insurance after being removed from the COBRA plan.  Her pre-existing conditions make insurers unwilling to take her on as a client." Appellant's Br. p. 11.  There is no evidence in the record supporting these assertions.

Furthermore, if Husband were ordered to pay for her health insurance, it would amount to spousal maintenance.  Wife has made no request for maintenance, nor is there any evidence in the record that meets the standards required for an award of spousal maintenance.  *See* I.C. § 31-15-7-2.  Therefore, the trial court did not err by declining to order Husband to pay for Wife's health insurance.

---

[6] We also note that the trial court took Wife's medical issues into account by ordering that she pay no child support.  Appealed Order p. 10.

## C. Property Brought Into the Marriage and/or Acquired Through Gift or Inheritance

[14] Next, Wife contends that the trial court should have deviated from the presumed equal division based on the property that each spouse brought into the marriage and/or acquired through gift or inheritance during the marriage. She argues that her pre-marital assets "were substantially more" than Husband's, emphasizing that she even used some of her assets to pay off Husband's mortgage. Appellant's Br. p. 12. Wife further notes that she has "substantial assets," including investment accounts from her previous marriage and an additional inheritance from her parents, that should continue to belong to her.[7]

[15] It is well accepted that Indiana follows the "one pot" theory, meaning that all property is included in the marital pot for division regardless of whether it was owned by one spouse before marriage, acquired by one spouse after the marriage and before the final separation, or acquired through joint efforts of both. *E.g.*, *Ahls v. Ahls*, 52 N.E.3d 797, 801 (Ind. Ct. App. 2016). In this case, both parties had assets before the marriage. Both parties had retirement accounts and Husband also had a home and real property (real property on which the couple later built a second home). Wife's parents gifted the couple

---

[7] Wife also argues that there were no children born of the marriage. As the trial court observed, however, Wife adopted Husband's son. Therefore, that child is considered to be of the marriage even though Wife evidently no longer wishes to maintain a relationship with her son.

jointly with annual sums of money. The fact that Wife allegedly[8] brought more assets to the marriage does not lead us to find that the trial court should have deviated from the presumed equal division of the estate.

[16] Moreover, the Wife wants to have her proverbial cake and eat it too. She asks that we find that she and Husband share her debt equally—debt that the trial court found she was able to pay off but had not, that she had incurred unnecessarily, and that she incurred in part without Husband's knowledge—but that she, and she alone, should be awarded her assets. We do not find that the trial court erred by declining to divide the estate in such a fashion. In reviewing the trial court's order, it is apparent that it carefully weighed all the evidence and reached conclusions regarding the parties' credibility, finding Wife's lacking. We decline to second-guess the trial court's conclusions. In sum, we find that the trial court did not err by dividing the marital estate equally.

## II. Living Expenses

[17] Next, Wife contends that the trial court erred by ordering each party to pay their own living expenses during the pendency of the action. Wife argues that the home that she lived in has more expenses than the home that Husband lived in, resulting in an unequal share of the costs.

---

[8] Wife did not introduce any evidence establishing the value of her investments at the date of the parties' marriage.

[18]     Initially, we note that Wife chose to live in the home she ended up in; she could have lived in the other one but elected not to. Moreover, Husband has had sole and exclusive custody of the child during the pendency of this matter. Wife has had no contact with the child since August 2016 and has provided no financial support. Additionally, as noted above, Wife has ample income from her parents and her investments—income that exceeds Husband's annual salary of approximately $41,000. Under these circumstances, even if the trial court's order did result in Wife bearing a greater share of the living expenses during the pendency of this action, we find no error.

## III. Cemetery Plots

[19]     Finally, Wife argues that the trial court erred by awarding Husband both of the couple's cemetery plots. We agree. Each party brought a cemetery plot to the marriage that they had obtained with their respective first spouses. Neither Husband nor Wife asked to be awarded both plots. Nevertheless, the trial court awarded both plots to Husband. We find that this portion of the order was erroneous. Therefore, we reverse on this issue only and remand with instructions to amend the final dissolution order to show that each party retains the cemetery plot they brought to the marriage.

[20]     The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.


May, J., concurs.
Robb, J., concurs in part and dissents in part with separate opinion.

| | |
|---|---|
| Wendy T. Broady, <br> *Appellant-Respondent,* <br><br> v. <br><br> David W. Broady, <br> *Appellee-Petitioner* | Court of Appeals Case No. <br> 18A-DR-309 |

**Robb, Judge, concurring in part and dissenting in part.**

I concur in parts II and III of the opinion. However, I respectfully disagree with the conclusions the majority reaches in part I.

I begin by noting the following findings by the trial court:

> 1. The trial court considered that Wife "receives" gifts from her parents and imputed income of $26,000 to her;

> 2. The trial court found Husband's income to be $40,500;

> 3. The trial court noted that Wife has severe health issues that prevent her from working;

4. The parties were married for four years and the trial court found that Wife has investment and retirement assets in excess of $600,000; and

5. The trial court ordered Wife to make a $300,000 equalization payment to Husband.

[23] With those findings in mind, I disagree that Wife has not shown error in the trial court's judgment. First, to the extent the trial court relied in any way on the gifts Wife has received from her parents in the past in determining her assets or in dividing the parties' property, I would hold that was in error. *See* Appellant's Corrected Appendix, Volume 2 at 10 (Findings of Fact and Conclusions of Law ¶ 9, stating "the Wife is employed at Kohls and receives dividends from her investments. She also receives money from her parents."); *see also* slip op. at ¶ 11 (noting Wife has "multiple sources of income, including gifts from her parents"). Yes, the evidence showed Wife received a check denoted "gift" in the amount of $16,000 from her parents on January 1, 2012—prior to the parties' marriage—and received checks for $26,000 at the beginning of 2013, 2014, 2015 and 2016. Wife also testified at the final hearing that she received a check from her parents in 2017, as well. The trial court imputed income of $26,000 to Wife. *See* Appellant's Corrected App., Vol. 2 at 10-11, ¶ 9. That Wife received this money in the past, however, is in no way a guarantee that she will continue to receive this money in the future.

[24] In this regard, I look to *Loeb v. Loeb*, 261 Ind. 193, 301 N.E.2d 349 (1973), in which our supreme court held that only property that is vested in the parties on

the date the petition for dissolution is filed is part of the marital estate. In *Loeb*, the court considered husband's remainder interest in a trust and determined it should not be included in the parties' marital estate because he would take nothing from the trust if he predeceased the settlor; therefore, he had no present interest of possessory value to include. *Id.* at 353. In other words, husband's interest was too remote and speculative to be included in a property settlement award. *Id.* Here, Wife has no present interest at all in the gifts her parents may or may not give her in the future. At any time, for any reason, or for no reason at all, Wife's parents may decide to discontinue giving her the financial gifts. Although there was evidence and testimony that Wife has received these gifts for at least the past six years, there was no evidence or testimony supporting the notion that her parents are obligated to continue giving the yearly gifts. Therefore, I cannot say, as Husband and the majority do, that she has "a promise of continued financial support from her parents." Slip op. at ¶ 9. As this money appears to be the source of the trial court's imputation of income to Wife and at least in part the reason for equally dividing the marital property, I would remand for the trial court to reconsider the property division without extrapolating the past gifts into future income available to support her after she makes a nearly $300,000 payment to Husband.

[25] Second, I agree with the majority that Wife's request for Husband to pay for her COBRA health insurance amounts to a request for maintenance. *See* slip op. at ¶ 13; *In re Coomer*, 622 N.E.2d 1315, 1320 (Ind. Ct. App. 1993) (noting COBRA medical benefit paid out of Husband's future income resembled an award of

spousal maintenance).  I disagree with the majority that Wife made no request for maintenance, however.  *See id.*  Wife did not file an answer to Husband's petition for dissolution, but she did file a motion for a provisional order.  In that motion, Wife noted that she is unemployed and unable to work due to her illness, and she requested a provisional order for maintenance during her disability.  In addition, Wife requested at the final hearing that Husband keep her on his health insurance through COBRA as long as allowed due to the fact she has a pre-existing condition: "[T]he insurances are not real happy[;] they don't want to insurance [sic] somebody with cancer."  Transcript, Volume Two at 67.[9]  Therefore, I believe the question of incapacity maintenance was squarely before the trial court and yet the trial court made no specific findings regarding this request, although it did note that Wife has "severe health issues which prevent her from working" in determining that she would not be ordered to pay any child support.  Due to that determination, Wife has some additional resources to meet her own expenses, but it amounts to only $100 per month.  Appellant's Corrected App., Vol. 2 at 19.  Because the trial court acknowledged Wife's severe health issues and inability to work but did not address her request for Husband to pay for COBRA benefits, I would remand for the trial court to consider this issue as well.

---

[9] Although Wife did not provide any evidence other than her own testimony regarding her insurability, it is a matter of common knowledge that pre-existing conditions can dramatically impact insurance availability and pricing.