Johnie JONES, Appellant,

v.

Marian R. JONES, Appellee.

No. S–7245.

Supreme Court of Alaska.

July 25, 1997.

Barbara A. Norris, Law Offices of Barbara A. Norris, Anchorage, for Appellant.

Moshe Calberg Zorea, Anchorage, for Appellee.

Before MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

MATTHEWS, Justice.

### I.  INTRODUCTION

In this divorce case the superior court divided the property of Johnie and Marian Jones.  Johnie appeals, arguing that the court erred in failing to identify certain property as being a part of the marital estate, in failing to properly value certain marital assets and debts, and in awarding the bulk of the couple's property to Marian.  For the reasons that follow, we reverse and remand.

### II.  FACTS AND PROCEEDINGS

Johnie and Marian Jones were married on May 1, 1963.  A decree of divorce was entered ending their marriage on June 30, 1995.  Johnie worked for the federal civil service in a supply warehouse at Fort Richardson from 1974 until arthritis and knee problems forced him to retire in 1992.  Marian was also a federal civil service employee throughout the marriage and remained so employed at the time of trial.[1]

The parties separated in December 1991.  Marian filed a complaint for legal separation and separate maintenance on March 25, 1994.  Johnie counterclaimed for divorce.  Johnie obtained a refund of his contributions to his retirement account, totaling $42,454.37, and deposited these funds into the court registry.  The only issue for trial was the division of the marital property.  At the conclusion of the trial the superior court entered findings of fact and conclusions of law.

The court found that during the course of the marriage Johnie "was involved in illegal gambling activities which resulted at times in significant losses of money."  The court also found that "[s]ince on or about March, 1979, Marian has been making all of the monthly mortgage payments of $785.00 on the family residence and monthly payments on the marital debt with no contribution from Johnie Jones."  The court found that the couple had marital property with a total equity value of $88,600, not including the parties' retirement accounts.  No value was placed on Marian's retirement account.  In dividing these assets the court found that

> through his illegal gambling, Johnie Jones has caused waste of marital assets and his contribution to preserving and maintaining the marital home has been minimal particularly since 1979.  The equities in this case favor a distribution of the marital estate which awards Marian Jones more than 50% of the marital assets.

The court awarded Marian the family residence, with a court-valued equity of $80,900; a 1989 Volvo automobile with equity of $5000; all of the household furniture and appliances, which were valued at $2000; and all of her retirement benefits.  She was also given sole responsibility for a debt incurred in the purchase of a refrigerator.  Johnie was awarded the entire amount of his retirement fund.  He was also required to pay a $100 credit card debt; debts owed to physicians; and federal income taxes owing from prior to 1992.

### III.  STANDARD OF REVIEW

We review questions of law based upon our independent judgment.  "Our duty

---

1. In 1992 Marian's gross wages were $34,608.  The parties filed joint income tax returns through 1991.  The parties' combined gross income from wages in the 1991 return is listed as $74,051, thus suggesting that Johnie's earnings were somewhat higher than Marian's.

is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979). Findings of fact may not be set aside unless they are clearly erroneous. Alaska R. Civ. P. 52(a). Findings as to the value of marital assets are subject to this standard. The trial court's determination of the proper division of marital property is reviewed under the abuse of discretion standard. *McDaniel v. McDaniel,* 829 P.2d 303, 305 (Alaska 1992). A division must be clearly unjust to amount to an abuse of discretion. *Malone v. Malone,* 587 P.2d 1167 (Alaska 1978); AS 25.24.160(a)(4). A property division which is based on a clearly erroneous factual finding or on an error of law must be set aside. *Wanberg v. Wanberg,* 664 P.2d 568 (Alaska 1983).

## IV. DISCUSSION

■ The proper procedure for a trial court to follow in making an equitable division of marital property pursuant to AS 25.24.160(a)(4) involves three steps: (1) the determination of what property is available for distribution; (2) the determination of the value of that property; and (3) the making of an equitable division. *Wanberg,* 664 P.2d at 574.

### A. Failure to Identify Property

Johnie first argues that the trial court failed to identify a $15,000 savings account as marital property. At trial, it was shown that Marian built this account by depositing the Permanent Fund Dividends she received over the course of the marriage. Johnie testified that his own Permanent Fund checks were deposited in the joint marital account and subsequently used for household expenses.

■ The court did not address the savings account when it divided the Joneses' property. This savings account was clearly property that was acquired during the course of the marriage. The court erred in failing to include it as marital property. On remand the court should equitably divide the account.

Johnie also points out that, although it was included in the trial court's listing of the marital assets, the court failed to award the couple's 1977 Plymouth to either of the parties. As marital property, the automobile should have been awarded to one of the parties. On remand the court should direct the disposition of the Plymouth.

### B. The Valuation of Assets

Johnie next argues that the trial court erred in its valuation of certain marital assets. The court found that there was $52,000 owing on the family residence. However, Marian stated at her deposition and in response to an interrogatory that the mortgage balance was approximately $46,000 at the time of trial. We have previously held, generally, that the date of valuation for property in a divorce proceeding should be as close as practicable to the time of trial, *Ogard v. Ogard,* 808 P.2d 815, 819 (Alaska 1991), and the amount of debt owed on a piece of marital property must be taken into account when determining its value. *Mack v. Mack,* 816 P.2d 197, 199 (Alaska 1991).

■ When a trial court chooses to value property at an earlier date, "there should be specific findings ... why the date ... is the more appropriate choice for valuation." *Doyle v. Doyle,* 815 P.2d 366, 369 (Alaska 1991) (quoting *Ogard,* 808 P.2d at 820). In this case, there were no such findings. Although the trial court found that the parties "stopped functioning as an economic unit" in December 1991, it is unclear as to how the trial court reached its conclusion regarding the value of the marital home. The possibility of undervaluation of the property coupled with the lack of any finding regarding the propriety of some earlier date of valuation amounts to clear error and must be remedied on remand.

■ The trial court also erred in failing to value Marian's vested retirement benefits. Retirement benefits earned during a marriage are a marital asset and are subject to equitable division. *Wainwright v. Wainwright,* 888 P.2d 762 (Alaska 1995). On remand these benefits must be valued and taken into account in the overall property division.

We also note that, although the trial court placed responsibility on Johnie for a federal income tax debt incurred prior to 1992, it failed to include any of that debt in its listing of marital assets and liabilities. On remand the trial court should quantify the debt, allocate it, and take it into account.

■ Lastly, the trial court made Johnie responsible for the payment of certain bills for the services of doctors rendered to him during the course of the marriage. Doctor's fees, incurred during the marriage, are marital debts which must be included in the marital estate and divided like any other marital property. *See Lynch v. Lynch,* 411 N.W.2d 263 (Minn.App.1987). The trial court failed to quantify those debts before placing responsibility for them on Johnie. On remand the trial court should value the debts, allocate them, and take them into account in the property division.

### C. *The Division of Property*

Johnie alleges error in the overall division of the marital property. The court awarded Marian $87,900 in marital assets and required her to pay a $500 debt.[2] She was also awarded her unvalued retirement account. Johnie was awarded his $42,500 in retirement funds, and was required to pay the unquantified federal tax debt and doctor's bills, and the $100 credit card debt.

■ It is presumed that an equal division is equitable. *Wanberg v. Wanberg,* 664 P.2d 568, 574–75 (Alaska 1983). Sometimes, however, this is not the case and an unequal division may be required to achieve equity. In dividing property, either equally or unequally, trial courts should be guided by the factors laid out by this court in *Merrill v. Merrill,* 368 P.2d 546 (Alaska 1962), which were later codified in AS 25.24.160(a)(4). The factors which should be considered are (1) the length of the marriage and the station in life of the parties during the marriage; (2)

the age and health of the parties; (3) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage; (4) the financial condition of the parties, including the availability and cost of health insurance; (5) the conduct of the parties, including whether there has been unreasonable depletion of marital assets; (6) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children; (7) the circumstances and necessities of each party; (8) the time and manner of acquisition of the property in question; and (9) the income-producing capacity of the property and the value of the property at the time of division.[3]

In its findings of fact and conclusions of law, the trial court refers to only one of these *Merrill* factors as the basis for the unequal division—the conduct of Johnie. It found that Johnie's "contribution to preserving and maintaining the marital home has been minimal particularly since 1979." It also found, "through his illegal gambling, Johnie Jones has caused waste of marital assets."

Johnie challenges as clearly erroneous the trial court's characterization of his contribution to the family as minimal since 1979. He argues: "Nothing in the record supports that. Mrs. Jones did not say it, and Mrs. Jones' attorney did not even argue it. The tax returns don't support it, and the lifestyle does not reflect it." Regarding the parties' lifestyle, Johnie argues:

> During the period from 1979 to 1991, as Mr. Jones pointed out, the parties lived together, furnished the house, bought a Volvo and a pickup truck, financed their child's college education, traveled to Europe together nine times, and maintained house payments.... This simply could not have been done on Mrs. Jones' salary

---

**2.** We note that, given that the equity in the house may have been undervalued, that the $15,000 savings account seems to have remained in Marian's possession, and that Marian received her unvalued retirement benefits, the value of her award may be substantially greater than the expressed amount.

**3.** Not every listed factor is relevant to every case, and non-listed factors may be relevant to a particular case.

alone. They filed joint tax returns every year, and it is obvious that the household was being run off of two incomes.

To support their arguments, both Johnie and Marian refer to portions of Marian's testimony in which she explained Johnie's history of contributing his paycheck to the parties' joint account. Although Marian testified that between March and December of 1979, Johnie did not provide her with any income or support, she conceded that they subsequently opened a joint bank account to which Johnie contributed his paycheck until September 1982. According to Marian, Johnie again deposited his paychecks starting in January 1983 "for maybe three months," but after that he "would go right into [his employer's] finance office and take his checks." As a result, Marian testified, she would "write the bills and the checks would bounce." When asked how often the checks for paying various bills had bounced, she responded, "This would have happened maybe 20 times."

Fully crediting Marian's testimony, it does not support the generalization made by the court that Johnie's contribution since 1979 was "minimal." While Marian's testimony can be read to suggest that Johnie failed to deposit his paycheck on more than the twenty occasions on which checks bounced, it does not clearly indicate how often Johnie refrained from depositing his paycheck after January 1983. Moreover, as indicated above, Marian conceded that Johnie deposited his paycheck into the parties' joint account from December 1979 until September 1982. Thus, the trial court's conclusion that Johnie made little or no contribution to the marital estate after 1979 is based upon evidence that is too limited in scope to support it.[4] Because the property division was based, at least in part, upon this erroneous

finding, the property division must be set aside.

As stated, the trial court also ruled that Johnie had committed waste of marital assets through his gambling losses. At trial, there was evidence of $8,800 lost over the course of the marriage.[5] $5,800 of this amount was shown to have been incurred in 1990. There was also testimony that this amount had been offset by Johnie's winnings and was not a net loss figure. However, discounting the latter testimony and assuming that there were no winnings to offset the gambling losses, the evidence as to losses does not support the disparate division of property ordered here.

Johnie argues that his gambling losses incurred prior to the separation were merely a form of recreational expense which cannot be used to justify the one-sided property disposition ordered by the court. Johnie argues:

> There is no evidence that Mr. Jones was addicted to gambling or that the amount he gambled increased over time. For him, gambling over an occasional card game was recreation and his only social outlet that he did on his own, other than the religious activities organized by Mrs. Jones.
>
> Mr. Jones' family did not want for anything. There was nothing intrinsically more damaging to the marital finances about Mr. Jones' gambling than many other forms of recreation, or hobbies. Had he spent money on pull tabs or in bingo parlors, or on trips to Las Vegas, any losses would have been "legitimate." There is no evidence in the record of "waste" of marital assets in any determinable dollar amount, and certainly insufficient evidence to justify giving Mrs. Jones $103,100.00 in the property division and Mr. Jones nothing. The parties reported giving away more money to the Catholic church than

---

4. The evidence shows, further, that some of the occasions when Johnie kept his paycheck out of the marital checking account were periods during which the couple was separated and the funds were used by Johnie for living expenses while apart from his wife. In *Streb v. Streb*, 774 P.2d 798 (Alaska 1989), we held it to be an abuse of discretion for a trial court to order a party to reimburse the marital estate for reasonable living

expenses incurred during a temporary separation of the couple. *Id.* at 802. Though, here, the trial judge did not directly order Johnie to reimburse the marital estate, the unequal property division has the same effect.

5. It might be inferred from trial testimony that there were more than $8,800 in losses.

Mr. Jones lost gambling in 1990, even ignoring his offsetting winnings.

The gambling issue must be viewed in context with Mr. Jones' steady employment over a thirty year marriage bringing income into the home, clearing the land, supporting the house, expensive furniture, interior design, Mrs. Jones having all of the clothes she wanted, a Volvo, annual trips to Europe, raising a son and sending him to Oxford, attending church, making close to $80,000 worth of charitable contributions to the church, and so forth. It is as if the court said, none of this upstanding life means anything, because you played cards and gambled from time to time.

Other than reiterating the court's finding that Johnie caused waste of marital assets through his gambling, Marian makes no response to Johnie's arguments.

■ Typically the question of wasted marital assets arises when a marital asset is lost or diminished *after separation but before the time of trial.* When a marital asset is sold after separation and the sale proceeds are spent for marital purposes or normal living expenses, then the expended marital asset is not taken into account in the final property division. When, however, there is evidence that the expended marital asset was wasted, or converted to a nonmarital form, the trial court may " 'recapture' the asset by giving it an earlier valuation date and crediting all or part of it to the account of the party who controlled the asset." *Foster v. Foster,* 883 P.2d 397, 400 (Alaska 1994).

The alleged wastage of marital assets which was found to have occurred here is not of the typical type described above for the gambling losses occurred prior to the parties' separation. Instead, Johnie's illegal gambling is governed by the *Merrill* factors, specifically the factor which requires consid-

eration of "the conduct of the parties, including whether there has been unreasonable depletion of marital assets." AS 25.24.160(a)(2)(E).

We generally share the concern reflected in Johnie's argument that value judgments concerning the nature of discretionary spending during a marriage should be avoided. What seems wasteful to one party may be a treasured source of solace to another, and it should generally not be for a judge to say which is which.

■ Under AS 25.24.160(a)(4) property is to be divided "without regard to which of the parties is in fault." However, as noted, subpart (E) of the same section mandates consideration of the conduct of the parties, including whether there has been unreasonable depletion of marital assets. There is an obvious tension between these two provisions. This tension is best resolved by construing "fault" in AS 25.24.160(a)(4) to refer to moral or legal misconduct which has led to the failure of the marriage, but not to economic misconduct which has unreasonably depleted marital assets. *See Hartland v. Hartland,* 777 P.2d 636, 642 (Alaska 1989) (stating that under AS 25.24.160, a "court cannot rely on one party's fault in ending the marriage to justify[ ] awarding a greater portion of the marital property to the other spouse"). The concept of economic misconduct is broad enough to include social or moral misconduct which leads to an unreasonable depletion of marital assets, such as domestic violence. *See* Brett R. Turner, *Equitable Distribution of Property* § 8.09, at 600 (2d ed.1994).[6] Therefore, a court may take into account economic misconduct under subpart (E), but it may not consider a party's moral or legal marital failings which do not amount to economic misconduct.

6. Other jurisdictions employ a similar definition of "economic misconduct." For example, in *In re Coomer,* 622 N.E.2d 1315, 1319–20 (Ind.App. 1993), the court upheld an uneven property division where a husband's physical abuse of his wife caused health problems for her that created a substantial likelihood of future medical expenses. The court noted that "while a party's conduct or fault in the breakup of the marriage is not a proper ground for an unequal division of marital property, a party's conduct during the marriage 'as related to the disposition or dissipation of their property' is." *Id.* at 1319 (citation omitted). It concluded that the trial court did not abuse its discretion in awarding the wife more of the marital property because "a good share of her income will be devoted to her medical care" as a result of the husband's conduct during the marriage. *Id.* at 1320.

According to one commentator, the following language from an intermediate appellate court in Wisconsin summarizes the prevailing legal principles on this point:

> The prohibition against considering marital misconduct does not prevent consideration of a party's depletion of the marital assets. Martial misconduct, ordinarily consisting of adultery or abandonment, was previously a factor that the court could consider in dividing the marital assets. Under the current statute, misconduct that caused the failure of the marriage is not a factor to be considered in dividing the marital estate. We conclude, however, that the court's authority to consider the contribution of each party to the marriage allows it to consider destruction or waste of the marital assets by either party.

*Anstutz v. Anstutz,* 112 Wis.2d 10, 331 N.W.2d 844 (App.1983) (quoted in John De-Witt Gregory, *The Law of Equitable Distribution* ¶ 9.03[1], at 9–13 (1989)).

Thus AS 25.24.160(a)(4) prohibits the superior court from considering Johnie's gambling to the extent that this conduct may have caused the failure of the marriage. Further, the fact that Johnie's gambling was illegal—card games—rather than legal—for example, bingo—is not of central importance. But this leaves unresolved the question as to whether his gambling was economic misconduct or, to use the terms of the statute, an unreasonable depletion of marital assets.

Professor Gregory, surveying states with a statutory structure similar to Alaska (with the exception that the term "dissipation of marital assets" rather than "unreasonable depletion of marital assets" is used), observes that the most frequently mentioned elements of unreasonable depletion are (1) use of personal property for the spouse's own benefit, (2) at a time when the marriage is breaking down (either before or after separation), (3) with an intent to deprive the other spouse of the other's share of the marital property:

> The Illinois courts and those in other states suggest with some frequency that for dissipation of assets to be considered as a factor in property distribution, a spouse

must use personal property for his or her own benefit at the time when the marriage is breaking down. On occasion, however, courts have departed from both of these requirements.

> . . . .

> Although the most common definition of dissipation makes no reference to intent to dissipate assets, a requirement of such intent is often implied or mentioned explicitly in judicial opinions on the subject. In *In re Marriage of Drummond,* [156 Ill. App.3d 672, 109 Ill.Dec. 46, 509 N.E.2d 707 (1987),] for example, the Appellate Court of Illinois noted not only that the husband's losing investments in commodities trading occurred at an early point in the marriage before there was evidence of discord, but also that "there was no evidence of intent to wilfully dissipate marital assets." [*Id.,* 109 Ill.Dec. at 54, 509 N.E.2d at 715.] Again, in *Robinette v. Robinette,* [736 S.W.2d 351 (Ky.App.1987),] the Court of Appeals of Kentucky stated:

>> We believe the concept of dissipation, that is, spending funds for a nonmarital purpose, is an appropriate one for the court to consider when the property is expended (1) during a period when there is a separation or dissolution impending, and (2) where there is a clear showing of intent to deprive one's spouse of his or her proportionate share of marital property. [*Id.* at 354.]

> Decisions in Missouri reflect a similar approach. In *Calia v. Calia,* [624 S.W.2d 870 (Mo.App.1981)] the Missouri Court of Appeals observed: "If one spouse secretes or squanders marital property in anticipation of divorce, the court may order reimbursement." [*Id.* at 872.]

Gregory, *supra,* ¶ 9.02[2], at 9–4—9–6.

It is possible that the trial court's conclusion that Johnie should be penalized for wasting marital assets because of his gambling can be reconciled with the above authorities.[7] Assuming that to be so, the court nonetheless unduly sanctioned Johnie for gambling. The proper method for dealing with an unreasonable depletion of marital

---

**7.** We note that all three of the identified elements are not necessarily present in every case.

assets would be for the trial court to recapture the proven losses by adding their value to the marital estate before making the equitable division and then crediting that part of the value to the account of the party responsible for the unreasonable depletion. *See, e.g., Foster,* 883 P.2d at 400; *Cox v. Cox,* 882 P.2d 909, 918 n. 5 (Alaska 1994); Gregory, *supra,* ¶ 9.02[4], at 9–9—9–11.

The court's failure to follow this methodology is another reason requiring that the property division be set aside.[8] On remand the trial court should be on guard not to "double count." That is, it should not recapture the gambling losses and credit them to Johnie's account and then also make a preferential division of the marital property in favor of Marian because of any waste of assets that it found. *Hartland,* 777 P.2d at 643.

## V. *CONCLUSION*

In sum, we hold that the trial court erred in failing to identify certain marital property and in failing to properly value certain other property; and that its overall division of the marital estate must be set aside because it is based on legal and factual errors. The decision of the trial court is REVERSED and REMANDED for division of the marital estate in accordance with the foregoing.[9]

COMPTON, C.J., and RABINOWITZ, J., not participating.

---

8. In view of our reversal on this point, we believe the trial court should also reconsider whether Johnie's gambling amounted to an unreasonable depletion of marital assets in light of the discussion contained in this opinion.

9. The court is authorized to conduct a supplemental evidentiary hearing.