*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KELLI M. RIGGS, | ) | |
| | ) | Supreme Court No. S-15172 |
| Appellant, | ) | |
| | ) | Superior Court No. 1SI-05-00214 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ERIC E. COONRADT, | ) | |
| | ) | No. 6961 - October 16, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Sitka, David V. George, Judge.

Appearances: Teka K. Lamade, Sitka, for Appellant. David Avraham Voluck, Sitka, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A mother appeals from a modified decree involving the custody of her three children. The superior court decided that the parents' inability to communicate justified a modification of the existing joint-custody arrangement, and that the best interests of the children favored an award of sole legal custody to their father. We conclude that the superior court did not abuse its discretion in making these decisions and therefore affirm them. We also affirm, as within the superior court's discretion, its allocation of the costs

of the court-appointed guardian ad litem. We remand for the superior court's clarification of one issue: whether it meant to include, in its final modified decree, a change to the father's weekend visitation schedule made by the attorney who drafted the decree.

## II. FACTS AND PROCEEDINGS

Kelli Riggs and Eric Coonradt were married and divorced twice, first marrying in 2000 and divorcing for the second time in 2006. They have three minor children. Their relationship deteriorated after their second divorce, but they successfully negotiated a custody agreement. Under the agreement they shared custody on an alternating two-week basis, and the non-custodial parent had dinner with the children on Wednesday evenings.

Despite the agreement, tensions between Kelli and Eric persisted: there were disputes over child support, allegations that Kelli's nephew sexually abused the parties' youngest son, allegations that Kelli exposed the children to an abusive partner,[1] and Kelli's arrest for drunk driving. In September 2011 Eric moved for primary physical and sole legal custody of the children, alleging that Kelli was exposing them to violence and substance abuse. The superior court found that a neutral party was necessary to advocate on the children's behalf and in March 2012 appointed a guardian ad litem.

The superior court held a two-day evidentiary hearing in January 2013 and at its close issued an oral decree. Finding that the parties' inability to cooperate required a modification of custody, and weighing what it found to be the most relevant best interest factors, the court determined that Eric should be awarded sole legal custody. The court also found that the alternating two-week system did not provide the stability that

---

[1] Kelli was engaged to a different partner by the time of trial.

the children required, especially during the school year; it therefore modified the physical custody arrangement so that the children would live with Eric for most of the school year and with Kelli for most of the summer.

Kelli was not represented by counsel during the hearing, and the superior court asked Eric's attorney to draft a proposed modified custody decree reflecting its findings and conclusions. After Kelli had a chance to respond to the first draft, Eric's attorney submitted a revised version of the modified decree. Kelli, through newly retained counsel, pointed out a change in the revised draft: the end of Eric's summertime weekend visits had been unilaterally extended from Sunday evening to Monday morning. The court signed the revised version of the modified decree without expressly addressing the change.

Kelli appeals, arguing that the superior court erred in four ways: (1) by concluding that a substantial change in circumstances justified a modification of custody; (2) by finding that the best interest factors favored a grant of sole legal custody to Eric; (3) by allocating to Kelli 20 percent of the guardian ad litem's fees; and (4) by signing the custody decree including the late-added change to Eric's visitation schedule.

## III.  STANDARDS OF REVIEW

We review de novo a superior court's decision that there has been a material change in circumstances justifying a modification of a prior child custody order.[2]

Superior courts have broad discretion in child custody decisions, and we will reverse only if findings of fact are clearly erroneous or if the superior court abused

---

[2]    *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014).

its discretion.[3] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[4] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err When It Determined That A Substantial Change In Circumstances Warranted Modification of Custody.

Kelli contends that Eric failed to demonstrate a change in circumstances sufficient to justify a modification of custody under AS 25.20.110(a). She notes that Eric's motion to modify was based on allegations of violence and substance abuse which the superior court did not find substantiated. She argues that the superior court relied instead on the children's academic performance, which she contends had not changed since the earlier order and thus could not justify modification.

But the superior court did not base its modification decision on either of these possible grounds; rather, it relied on evidence that the parents could not effectively communicate. The court found "a complete breakdown in communication between the [p]arties, making joint legal custody impracticable and injurious to the children's overall well-being." Kelli admits that legal custody was not working because of the parents'

---

[3]     *Ronny M. v. Nanette H.*, 303 P.3d 392, 399 (Alaska 2013) (citing *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

[4]     *Id.* (quoting *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002)) (internal quotation marks omitted).

[5]     *Id.* (quoting *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998)).

inability to cooperate, though she contends it was one-sided; in her brief she lays out what she portrays as Eric's failures to communicate about the children. But she acknowledged in her testimony in the superior court that "it's partly [Eric's] fault and it's partly my fault. . . . It's lack of communication." And what matters to a change in circumstances is not which parent is most at fault, but whether the parents are able to communicate in their children's interests — and here they indisputably were not.

A "continued lack of cooperation" between parents may be a change in circumstances sufficient to justify a modification of custody under AS 25.20.110.[6] And in *T.M.C. v. S.A.C.,* we upheld the superior court's reliance on the parents' sustained non-cooperation to reopen the custody arrangement even where, as here, neither parent had raised it as grounds for modification.[7] Although Eric's motion to modify was based on other grounds, the superior court did not err when it relied instead on the "complete breakdown in communication" that has substantial support in the evidence.

B.      **The Superior Court Did Not Abuse Its Discretion When It Awarded Sole Legal Custody To Eric.**

Kelli contends that the superior court abused its discretion when, in considering the best interests of the children, it granted sole legal custody to Eric, who Kelli asserts was likely to withhold information about the children. She points to facts supporting Eric's "history of withholding or hiding information from [her] [and Eric's] general uncommunicativeness." She also argues that the court did not give enough weight to her own greater availability for the children during the day due to her more flexible schedule.

---

[6]      *T.M.C. v. S.A.C.*, 858 P.2d 315, 319 (Alaska 1993).

[7]      *Id.* at 318-19.

Having found that the parents' inability to communicate made joint legal custody unworkable, the superior court had to award sole legal custody to one parent or the other.[8] The court found neither parent to be an ideal choice. It based its decision primarily on what it found to be Eric's clearer recognition of the children's educational and emotional needs. The court "did not believe [Kelli] appreciates the dire straits of these children educationally as much as [Eric] does," and it found that Eric "more accurately and adequately considered the [emotional] needs of his youngest son." The court acknowledged the possibility that Eric might "establish a wall to keep [Kelli] out" if he was awarded sole legal custody. But Kelli, the court found, was prone "to use her custody privileges as a sword" against Eric, and this attitude was "more destructive to the parental relationship than ignoring it." Supporting the court's finding was testimony that Kelli distrusted the police department, the Office of Children's Services, and local counseling facilities, and that she therefore limited contact between her children and the services that were likely to benefit them. On balance, the court viewed the likelihood that Eric would try to shut Kelli out as less harmful to the children than Kelli's desire to use custody as a weapon against Eric.

It is true, as Kelli argues, that her day-to-day availability is a relevant consideration, as it could contribute to the stability of the children's home environment.[9] But the court was aware of Kelli's schedule and still found this benefit outweighed by other factors, concluding that the children's educational and emotional needs would be better served by Eric, especially during the school year.

---

[8] *See Peterson v. Swarthout*, 214 P.3d 332, 336-37 (Alaska 2009).

[9] *Farrell v. Farrell*, 819 P.3d 896, 899 (Alaska 1991) (approving of the superior court's consideration a parent's day-to-day availability).

"We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[10] There is substantial evidence in the record to support the superior court's findings of fact, which are not clearly erroneous. Presented with a difficult choice, the superior court reached a reasonably balanced custody arrangement that falls within the bounds of its broad discretion.

### C. The Superior Court Did Not Abuse Its Discretion When It Allocated Kelli A Portion Of The Guardian Ad Litem's Fees.

Kelli argues that the superior court abused its discretion when it allocated to her 20 percent of the fees charged by the guardian ad litem (GAL) assigned to advocate for the best interests of the children. She argues she should not have to bear any of the expense, given that it was Eric who demanded the GAL and committed to bear the cost; that "[b]ut for Eric's disparately high income, the appointment could have been made at public expense"; and that she was financially stressed.

We have already rejected the argument that only the party who requests a GAL may be held liable for the fees.[11] The appointment of a GAL is ultimately the court's responsibility and is committed to its discretion.[12] In this case the superior court found the appointment to be "necessary and proper to protect the best interests of the

---

[10] *Ebertz v. Ebertz*, 113 P.2d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[11] *Siggelkow v. Siggelkow*, 643 P.2d 985, 989-90 (Alaska 1982).

[12] AS 25.24.310; *see also Thomas v. Thomas*, 171 P.3d 98, 104 (Alaska 2007); *H.P.A. v. S.C.A.*, 704 P.2d 205, 212 (Alaska 1985) (citing *Siggelkow*, 643 P.2d at 989-90).

minor children" due to "the extreme tension between the parents and the need for a neutral party to independently investigate and present evidence and advocate on behalf of the children's best interests." The children's best interests are the responsibility of both parents equally. That it was Eric who filed the motion prompting the court's appointment of the GAL is irrelevant to the issue of the GAL's fees.

Nor was Kelli's financial situation such as to necessarily relieve her of her share of the expense. Alaska Statute 25.24.310 and Alaska Rule of Civil Procedure 90.7 govern a GAL's appointment and payment. We have held that the statute "generally precludes the superior court from taxing only one parent with the costs of a guardian ad litem where both parents can afford the cost,"[13] and Rule 90.7(m) provides that the costs should be shared equally "unless the court finds good cause to change this allocation." In *H.P.A. v. S.C.A.*, for instance, we affirmed the superior court's decision to allocate to the wife one-third of the GAL's costs where she could "reasonably afford to pay [the] amount."[14]

In this case, the superior court expressly considered the disparity in the parents' incomes in calculating its allocation of the GAL's fees. The court had earlier held Eric solely responsible for the GAL's $1,500 retainer. Of the remaining fees, the court assigned Eric 80 percent ($4,689.84) and Kelli 20 percent ($1,172.46), based on their relative incomes.[15] Implicit in this allocation is a finding of good cause to deviate

---

[13]     *Siggelkow*, 643 P.2d at 990. The statute at issue in *Siggelkow* was AS 09.65.130, later renumbered as AS 25.24.310.

[14]     *H.P.A.*, 704 P.2d at 212.

[15]     The court extrapolated the parties' incomes from their paystubs, W-2s, and the affidavits required by Civil Rule 90.3.

from the 50/50 allocation contemplated by Rule 90.7(m). The court did not abuse its discretion in making this allocation.

> **D. The Scrivener's Change To The Modified Custody Decree Should Be Addressed On Remand.**

Kelli argues that the superior court abused its discretion when it signed a proposed modified custody decree allowing Eric to return the children on Monday mornings following his summertime weekend visits; this was a departure from an earlier version of the modified decree, which required the children to be returned on Sunday evenings. Kelli argues that the alteration was also a substantial departure from the court's oral decree[16] and that it lacks sufficient explanation in the record. We agree that the issue needs clarification.

The superior court, after giving its findings orally, assigned Eric's attorney the task of drafting the modified custody decree. The attorney's first draft defined both parties' visitation weekends in the same way: beginning at 5:00 p.m Friday and ending at 5:00 p.m. Sunday. Kelli filed objections related to other aspects of the decree and the court ruled on them; Eric's attorney then submitted a revised version of the modified decree. But the revised version also made the change at issue here: it changed the timing of Eric's weekend visits so that they extended to Monday mornings.

Kelli had represented herself at the modification hearing but retained a lawyer afterward. Through her new lawyer, she immediately filed a notice calling the superior court's attention to the change in visitation timing, which she suggested was "a drafting errata." The court did not respond to Kelli's notice, however; it signed the

---

[16] There is no direct conflict with the court's oral findings and conclusions. The court explicitly stated the timing of Kelli's weekend visits with the children: 5:00 p.m. Friday to 5:00 p.m. Sunday. It went on to assign certain summertime weekends to Eric, but it did not specify the hours for those visits.

revised version of the modified custody decree as submitted, with a Monday morning return for Eric's summer weekend visits.

We have held that "the superior court is not required to articulate its thoughts on every issue it considers" when it makes decisions about custody.[17]   But this specific issue was not discussed at trial, and the different definitions of Eric's and Kelli's weekends did not surface until the revised version of the modified decree, after Kelli's objections to the first draft had been ruled on and incorporated into the second. Moreover, although notice to the other side is not at issue here because Kelli's attorney saw the change, "[n]ew or additional matter should not have been included in the written findings without giving [the other side] advance notice of the changes and an opportunity to object."[18]

We have repeatedly observed that "[c]ounsel agreeing to draft written findings and conclusions for the superior court is essentially a scribe who must accurately memorialize the court's oral findings and conclusions."[19]  Furthermore, "[i]f [the drafting] counsel has questions about what a court has ruled or perceives ambiguity, the proper course is to flag the issue so that the court may revisit it."[20]  It is particularly

---

[17]     *Peterson v. Swarthout*, 214 P.3d 332, 338 (Alaska 2009) (citing *Thomas*, 171 P.3d at 102-03); AS 25.20.110.

[18]     *Ogden v. Ogden*, 39 P.3d 513, 519 (Alaska 2001) (citation omitted).

[19]     *McDougall v. Lumpkin*, 11 P.3d 990, 998 (Alaska 2000); *see also Ogden*, 39 P.3d at 518.

[20]     *McDougall*, 11 P.3d at 998; *see also Ogden*, 39 P.3d at 519 ("[I]f Julie's counsel encountered questions or uncertainties in drafting the findings and conclusions, she should have at least specified in her proposed order those findings that were extrapolations from the court's oral remarks or otherwise were not mentioned by the
(continued...)

important that the drafting counsel take care "to ensure faithful and accurate renditions of the court's rulings" when the other party is unrepresented;[21] here, although Kelli obtained counsel after trial, the order being transcribed had been stated first on the record at the hearing, when Kelli was proceeding pro se and had no attorney of her own to independently recollect or record the substance of the court's rulings.

Although Kelli's new attorney immediately caught the deviation and called it to the court's attention, the circumstances leave us in some doubt as to whether the court intended to incorporate it into the signed decree. It is the role of the superior court to ensure that any decree drafted by a party conforms to the court's own rulings.[22] We remand the issue to the superior court for an express adoption or rejection of Eric's proposal that summer weekend visits extend to Monday mornings.

## V.    CONCLUSION

We REMAND for the superior court to expressly adopt or reject the change to Eric's weekend visitation in the second draft of the modified custody decree. We AFFIRM the superior court's orders in all other respects.

---

[20](...continued)
court.").

[21]    *McDougall*, 11 P.3d at 998.

[22]    *Id.* ("An attorney's failure to submit written proposed findings conforming to the oral findings does not relieve a trial court of responsibility for confirming that the written findings reflect the court's thinking."); *Indus. Indem. Co. v. Wick Constr. Co.*, 680 P.2d 1100, 1108 (Alaska 1984) ("A trial court is . . . entitled to adopt findings and conclusions prepared by counsel, so long as they reflect the court's independent view of the weight of the evidence." ) (discussing Alaska Civil Rule 78(a)).