NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JULIE CHRISTINE  BERG, | ) | |
| | ) | Supreme Court No. S-16114 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-13-02071 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JESSE ARNOLD BERG, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1690 – August 15, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances:  Julie Christine Berg, pro se, Homer, Appellant. Jesse Arnold Berg, pro se, Kodiak, Appellee.

Before:  Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.      INTRODUCTION

At the conclusion of Julie and Jesse Berg's divorce and custody trial the superior court awarded primary custody of the parties' two children to Jesse.  The court divided the marital estate equally, despite the parties' disparate incomes.  We reverse the court's division of property, but we affirm its custody order.

---

[*]      Entered under Alaska Appellate Rule 214.

## II.  FACTS AND PROCEEDINGS

### A.  Pretrial Proceedings

Julie and Jesse Berg married in Wasilla in 2007.  They have two children, born in 2012 and 2013; the second child was born after the couple separated.  Jesse has two daughters, with whom he has visitation rights, from a previous marriage.

Julie and Jesse separated in August 2013, when Jesse went to Kodiak for work; Julie filed for divorce and a restraining order shortly afterward.  Julie asked for sole legal and primary physical custody of their children.  Julie also filed a motion for sole occupancy of the marital residence, which the superior court granted at the end of September.  Trial did not begin until April 2015, because the parties repeatedly agreed to continuances.

### B.  Trial

At trial the parties both sought primary physical custody of the children.  Julie and Jesse offered competing accounts of each other's fitness as a parent.  Julie described Jesse as an angry, verbally abusive partner whom she feared.  Jesse described Julie as violently jealous, a liar, and a "con artist."  Julie said Jesse was unwilling to facilitate her contact with the children, but she testified that she had taken one or both of the children out of the state on two occasions without Jesse's permission, which was required by a court order.  Jesse claimed that Julie had falsely told the hospital  where their second child was born that Jesse was subject to a restraining order.  He admitted, though, to once keeping the children in his custody for about two days longer than Julie intended, claiming that it was necessary to make a point about her own bad exchange practices.

Julie claimed that Jesse had no interest in parental responsibilities, which he tended to regard as "women's work."  Jesse responded that Julie's home was "nasty," that the children smelled "sour" when she brought them to him, and that he had once

received from Julie a dirty nebulizer meant to help the younger child's breathing issues.

Jesse maintained that Julie and his ex-wife Corinne were in "cahoots" to keep his children away from him, as shown by Corinne's attendance at Jesse and Julie's divorce proceedings. He conceded that his relationship with his oldest daughter was "very difficult" but said this was because she had been "manipulated" by Corinne and Julie, who had "been whispering poison in [his daughters'] ears." Jesse also admitted to having owed substantial amounts of unpaid child support to Corinne, but complained that this was because the court in that case had wrongly deemed his previous support payments to be gifts.

Julie called witnesses to support her case. A daycare worker testified that the children appeared well-groomed and were happy to see both their mother and their father when either parent picked them up. A family friend testified that both Jesse and Julie were good parents. And Corinne testified that Jesse had been held in contempt for failing to pay her child support and that his current arrears amounted to about $45,000.

The parties also disputed the division of the marital property. Julie argued that the property should be split 65/35 in her favor. Jesse proposed that the marital property be split 50/50 and that Julie be credited for the value of the marital home even though it had been foreclosed on and sold. Julie is trained as a hyperbaric chamber operator and earned approximately $30,000 per year at the time of the divorce. Jesse worked as a carpenter and said that he earned about $160,000 in 2014.

Julie lost the marital residence to foreclosure in November 2014, while trial was pending. She testified that she had moved into the marital home in April 2004, before she and Jesse were married. Jesse explained that he had built the house himself on land that he had bought before he met Julie. After they married Julie obtained a mortgage on the property, in her name alone, to enable Jesse to pay his child support arrears to Corinne.

The mortgage was in Julie's name, but she and Jesse did not have an agreement about who would make the monthly $1,600 mortgage payments. Jesse apparently made his last contribution to the mortgage payments in August 2013, around the time he left for Kodiak. Julie made the mortgage payments in September and October, but started missing payments soon after. She made two payments in January 2014, but no other payments after that.

Julie testified that she "really was trying to keep the property." She also testified that, although she had apparently failed to tell Jesse that she was behind on the mortgage, he knew about her situation because he called her in May or June 2014 to ask why she was behind. Jesse testified that he had called her to ask about the house but that she was not forthcoming about what was owed.

Julie never told Jesse that she was losing the house, and he did not learn about the November 2014 foreclosure sale until the month after it happened. The house sold at auction for $258,383. Jesse's appraiser valued the home at $370,000 at the time of foreclosure. Jesse and Julie disputed the amount of personal and marital property that was lost with the home.

C.    **The Superior Court's Findings**

The superior court awarded the parties joint legal custody and awarded Jesse primary physical custody of the children. Although the court found no credible evidence of domestic violence, abuse, or neglect, it noted that Jesse and Julie had a "troubling relationship dynamic." The court noted that Jesse had engaged in "intimidating and belittling behaviors" and that Julie, for her part, had shown "extremely poor financial judgment" and was not willing to foster an open relationship between Jesse and the children.

The superior court found that Jesse "[had] a greater capability to ensure that the children's daily physical and emotional needs are met consistently and

appropriately," based on his stable residential situation, experience as a single parent, and ability to care for the children full time in the construction off season. The court expressed concern "about the level of cleanliness in [Julie's] home and its impact on the children." It also found that Jesse "[was] in a better position to facilitate contact between [Julie] and the children," even though he "[had] a pattern of non-communication with his former wife, his non-custodial children, and [Julie]."

In its division of the marital estate the superior court examined the property that had been wasted and the child support owed. It found that Julie had wasted $111,617 when she lost the house to foreclosure; the court made this determination by subtracting its price at auction from the appraised value of $370,000. The court also found that Julie had wasted $42,274.50 in marital property and $131,618 in Jesse's personal property by interfering with his access to the home after foreclosure. And it found that Jesse owed Julie $48,234 in child support.

The court found that "an equal distribution of assets [was] fair and balanced under [the] totality of the circumstances." It acknowledged that Julie and Jesse had "disparate incomes," but stated that Julie's "significantly lower earning potential [was] offset by her unreasonable depletion of marital, premarital, and nonmarital property." After crediting the wasted marital property to Julie's half of the estate, the court found that Julie owed Jesse an equalization payment of $197,753.14.

## D. Julie's Motion For Reconsideration

Julie filed a motion for reconsideration of both the property and custody decisions. She asked the court to make a division of the estate more favorable to her, arguing that the court had double counted her marital waste, and to reevaluate its custody decision.

The court made supplemental findings and denied Julie's motion. The court found that an equal division of the property was fair, even discounting Julie's waste,

because of Jesse's new financial responsibilities as primary physical custodian of the children and because it was unlikely that Jesse would receive financial support from Julie. It declined to modify its custody order, explaining that it had "serious concerns about [Julie's] ability to exercise sound judgment to meet the children's needs and act in their best interests," while Jesse's situation was "much more stable."

Julie appeals. Both parties are representing themselves.

## III. STANDARD OF REVIEW

The equitable division of marital property involves three steps: "(1) determining what property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[1] "The second step, the valuation of property, is a factual determination that we review for clear error."[2] "We review the [superior] court's third step, the equitable allocation of property, for abuse of discretion"[3] and "will not disturb the [superior] court's allocation unless it is clearly unjust."[4]

"Superior courts have broad discretion in child custody decisions, and we will reverse only if findings of fact are clearly erroneous or if the superior court abused its discretion."[5] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while

---

[1]    *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014).

[2]    *Id.*

[3]    *Id.*

[4]    *Partridge v. Partridge*, 239 P.3d 680, 685 (Alaska 2010) (citing *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005)).

[5]    *Judd v. Burns*, 397 P.3d 331, 335 (Alaska 2017) (quoting *Riggs v. Coonradt*, 335 P.3d 1103, 1106 (Alaska 2014)).

ignoring others.' "[6]  A court must "determine custody in accordance with the best interests of the child."[7]

## IV.  DISCUSSION

### A.  Dividing The Marital Estate Equally Between The Parties Was An Abuse Of Discretion.

Julie argues that the superior court abused its discretion by "double count[ing]"[8] the value of the wasted property in its division of the marital estate.  We agree that the court abused its discretion in making this property division.

Although there is a "general presumption that an equal distribution of property is fair and equitable," courts may not rely on this presumption without considering the facts and circumstances of the case.[9]  "When even a superficial examination and balancing of the statutory factors appear to weigh in favor of the spouse who earns substantially less than the other spouse," the court must specify why it did not give the lesser-earning spouse a larger share of the estate.[10]  In *Jones v. Jones* we warned against "double count[ing]" a party's marital waste.[11]  In that case we reversed the

---

[6]     *Id.* (quoting *Riggs*, 335 P.3d at 1106).

[7]     AS 25.24.150(c).

[8]     *See Jones v. Jones*, 942 P.2d 1133, 1141 (Alaska 1997).

[9]     *Day v. Williams*, 285 P.3d 256, 263 (Alaska 2012) (citing *Fortson v. Fortson*, 131 P.3d 451, 457 (Alaska 2006)).

[10]     *Id.* (vacating superior court's property division and remanding for additional findings when, among other things, parties had disparate incomes and superior court offered only "a conclusory statement that 'a 50-50 distribution of the marital estate is fair given all of the circumstances' ").

[11]     942 P.2d at 1141.

court's property division.[12]  We cautioned the court on remand not to first credit any alleged marital waste to the account of the offending spouse and then divide the marital property in favor of the wronged spouse because of that same waste.[13]

The superior court here assigned Julie the value of the wasted home equity, plus more than $42,000 in other wasted marital property, and $131,618 worth of Jesse's lost personal property.  Julie earns about $30,000 per year, while Jesse earns about $160,000.  The court noted the parties' "disparate incomes" and found that Julie's earning potential was "significantly lower" than Jesse's.  But the court found that this disparity was offset by Julie's "unreasonable depletion of marital, premarital, and nonmarital property," and it maintained the 50/50 property division.  As we held in *Day v. Williams*, the court must specify the reasons it did not award a larger share of the property to the lesser-earning spouse.[14]  The court here did not adequately do so.  It also simultaneously recaptured the value of the wasted assets and factored them into its equitable division; this was an impermissible "double count" like the one we warned against in *Jones*.[15]

When Julie argued this in her motion for reconsideration, the superior court did not modify the 50/50 property division.  Instead the court justified the division on the ground that "[Jesse's] circumstances and necessities are greater because he now has primary physical custody of the children and is unlikely to receive financial support from [Julie]."

---

[12]    *Id.* at 1141.

[13]    *Id.* (citing *Hartland v. Hartland*, 777 P.2d 636, 643 (Alaska 1989)).

[14]    285 P.3d at 263.

[15]    942 P.2d at 1141.

This finding is inadequate to support the property division. In *Jerry B. v. Sally B.* we remanded an unequal property division based on the superior court's determination that the custodial parent would receive "very little child support" because of the non-custodial parent's "limited income."[16] We noted that the parties' custody agreement already required the non-custodial parent to pay child support, and we held that the superior court's reliance on the obligor parent's "limited income" did not explain how the existing support arrangement "was insufficient to meet the needs of the children."[17] The court's finding here is similarly lacking in explanation. Julie is currently required to pay Jesse $523 per month in child support. The court did not explain why Julie was unlikely to provide this financial support, or why such support was inadequate to provide for the children's needs.

We conclude that the superior court's analysis does not support an equal division of the marital estate between parties of such disparate incomes. Its division of the marital estate was an abuse of discretion.[18]

---

[16] 377 P.3d 916, 936 (Alaska 2016).

[17] *Id.*

[18] Julie raises several other arguments: that she was not the only spouse at fault for losing the marital home, that the court applied the wrong standard for finding waste, and that the court should have considered giving her credit for post-separation mortgage payments and paying down Jesse's premarital debts. The court's finding that Julie was at fault for wasting property is not clearly erroneous, given her failure to inform Jesse of her default on the mortgage or of the ensuing foreclosure. *See Stanhope v. Stanhope*, 306 P.3d 1282, 1288 (Alaska 2013) (reviewing a waste finding for clear error). Julie's arguments related to credits and the proper standard for waste are waived because she did not raise them to the superior court. *See Harvey v. Cook*, 172 P.3d 794, 802 (Alaska 2007) ("[I]ssues not properly raised in the trial court will not ordinarily be considered on appeal." (citing *D.J. v. P.C.*, 36 P.3d 663, 667-68 (Alaska 2001))).

Julie also argues that the superior court erred in valuing or assigning

(continued...)

**B.** **It Was Not An Abuse Of Discretion To Consider Julie's Actions Relating To The Foreclosure In Determining Which Parent The Statutory Best Interests Favored.**

Julie argues that the superior court erred in giving primary physical custody of the children to Jesse and inappropriately considered and weighed the foreclosure in its custody determination. We disagree.

The superior court's findings demonstrate that it did not abuse its discretion: It considered Julie's actions related to the foreclosure in its analysis of the relevant factors in AS 25.24.150(c) and considered the foreclosure among other evidence to determine which parent those factors favored.

The court found that Jesse had a greater capability to meet the daily needs of the children,[19] partially because of the "extremely poor financial judgment" that Julie had displayed in her actions relating to the foreclosure. The court was concerned that her loss of the house reflected poorly on her ability to ensure that the children were properly housed and supported. But it also credited Jesse's testimony that the children routinely came to Jesse "ill, dirty, not properly clothed, and hungry" and once came with a dirty

_____

[18] (...continued)
ownership to several items of property, including the marital home. The court's disposition of most of these items was supported by testimony and was not clearly erroneous. *See Cox v. Cox*, 882 P.2d 909, 913-14 (Alaska 1994) (citing *McDaniel v. McDaniel*, 829 P.2d 303, 305 (Alaska 1992)). But the status of one item, a Mossberg 12 gauge shotgun, remains unclear. Julie testified that the shotgun was a premarital item that belonged to her and was in Jesse's possession. Jesse did not rebut this testimony. It is unclear from the record whether the shotgun was awarded to Julie. It is therefore appropriate for the court to determine the status of the shotgun on remand.

[19] AS 25.24.150(c)(1), (2).

nebulizer.[20] The court also considered that Jesse was in a stable residential situation, had experience as a single parent, and would be able to spend more time with the children due to his work schedule.

The superior court found that Jesse was more likely than Julie to foster communication with the other parent.[21] In reaching its conclusion, the court considered Julie's failure to communicate about the foreclosure on the marital home, her failure to provide Jesse with medical information about the children, and her false statement to hospital staff that she had a protective order against Jesse during the birth of one child. It also considered that Julie twice violated its order by taking the children out of the state without Jesse's consent or knowledge. While the court recognized that Jesse had a pattern of non-communication with Julie, it still concluded that Jesse was in a better position to facilitate contact.

In its order denying Julie's motion for reconsideration the court rejected Julie's argument that stability favored her.[22] The court stated that Julie "lost the children's home in an irresponsible and preventable manner" and that Jesse had "established a household and a support system in Kodiak that could meet the children's needs."

---

[20]     Julie contests the superior court's decision to credit Jesse's testimony about the children being dirty or not well fed. But "[w]e give particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." *Snider v. Snider*, 357 P.3d 1180, 1190 (Alaska 2015) (alteration in original) (quoting *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013)).

[21]     *See* AS 25.24.150(c)(6).

[22]     *See* AS 25.24.150(c)(5).

Because of the physical distance between the parents and transportation arrangements involved, it would be virtually impossible for the parents to have shared physical custody. In determining which parent should have primary physical custody, the superior court considered the statutory best interest factors. The superior court did not abuse its discretion by considering Julie's financial choices in determining which parent the statutory factors favored[23] nor did it give disproportionate weight to the foreclosure.[24]

## V.    CONCLUSION

We REVERSE the superior court's division of the marital estate and REMAND to allow the superior court to either provide an explanation for its division of the property or to order a new equitable distribution. The status of Julie's shotgun should also be considered on remand. We AFFIRM the superior court's award of primary physical custody to Jesse.

---

[23]    *See Fletcher v. Fletcher*, 581 N.W.2d 11, 15-16 (Mich. App. 1998) (affirming trial court's consideration of mother's "poor judgment in financial matters that affected the children" as part of its analysis of statutory best interests factor); *see also Orrill v. Orrill*, 5 So. 3d 279, 284-85 (La. App. 2009) (affirming trial court's award of primary physical custody to father in part because of mother's financial actions and pending foreclosure suit against mother's home).

[24]    *See Judd v. Burns*, 397 P.3d 331, 335 (Alaska 2017).